[Crim. No. 268.  First Appellate District.—December 20, 1910.]

THE PEOPLE, Respondent, v. MICHAEL JOSEPH CONBOY, Appellant.

CRIMINAL LAW—MURDER—LONG DELIBERATION OF JURY—REQUEST FOR FURTHER INSTRUCTIONS—PREJUDICIAL REMARKS OF JUDGE—OPINION OF GUILT INTIMATED.—Upon a prosecution for murder and conviction of manslaughter, where after long deliberation by the jury they requested further instructions, which were given, it was prejudicial error for the judge further to remark to them, "I suggest to you that there is no reason why twelve honest, intelligent, reasonable men should not reach a conclusion in this case, and I am surprised that you have not done so already," and "Now, go out and do your duty," as intimating that the evidence in the case warranted a verdict of guilty, and that the jury should so find.

ID.—RELIANCE OF JURIES ON FAIRNESS AND CORRECT VIEWS OF JUDGES—DUTY OF JUDGE.—It is well known that juries rely with great confidence upon the integrity and fairness of judges, and the correctness of their views; and for this reason a judge should never throw the weight of his judicial position into a case either for or against the defendant, unless satisfied that the evidence is insufficient to justify any conviction, in which case it is his duty so to advise the jury. But where it has not so advised them, to intimate the opinion of the judge that the jury ought to agree is to intimate his opinion that the defendant is guilty, and that they should so find.

ID.—PRACTICAL DECISION OF CAUSE BY JUDGE.—A judge who intimates his opinion on the facts to the jury, of which they are the exclusive judges, practically decides the cause in violation of the constitution, while appearing to avoid the responsibility of such a decision.

15 Cal. App.—7

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

J. J. Dunne, and Robert Ferral, for Appellant.

U. S. Webb, Attorney General, J. Charles Jones, C. M. Fickert, District Attorney, and Maxwell McNutt, Assistant District Attorney, for Respondent. ·

KERRIGAN, J.—The defendant was informed against for the crime of murder. He was tried and convicted of manslaughter. Thereupon he moved for a new trial, which was denied, and he was thereupon sentenced to serve a term of seven years in the state prison. This appeal is prosecuted from the judgment.

After the jury had been deliberating upon their verdict for seven and one-half hours, they returned into court at 11:30 P. M. and requested further instructions. In complying with this request the trial judge concluded the charge with the following remarks: "Now, gentlemen, I think I have read to you about all the instructions you desire upon these points, and I suggest to you that there is no reason why twelve, honest, intelligent, reasonable men should not reach a conclusion in this case, and I am surprised that you have not done so already. And I want to say to you that you should consider the evidence offered and admitted here and the law as given you by the court, and decide this case upon that, and not upon any personal observation or relations or experience that any of you may have had. Now, go out and do your duty."

These remarks amounted to a plain intimation that the court thought the evidence in the case warranted a verdict of guilty, and that the jury should so find. If the evidence was insufficient to justify a conviction, it was the duty of the court to thus advise the jury. Not having so advised them, but, on the contrary, having told them that there was "no reason why twelve honest, intelligent, reasonable men should not reach a conclusion" in the case, and having expressed surprise that they had not done so already, and thereupon having

admonished the jury to "go out and do its duty"—by this conduct it must be held that the trial court impliedly instructed and urged the jury to convict the defendant. Nothing is better known among lawyers than that juries rely with great confidence on the integrity and fairness of judges, and upon the correctness of their views. For this reason a judge should be careful not to throw the weight of his judicial position into a case, either for or against a defendant. The case at bar is so completely and fully covered by the case of *People* v. *Kindleberger*, 100 Cal. 367, [34 Pac. 852], that further comment would seem unnecessary. There the jury, after having deliberated for an hour, requested further instructions, and the court, in compliance with this request, among other statements, said: "In view of the testimony in this case the court is utterly at a loss to know why twelve honest men cannot agree." There it was held that the trial court, not having advised an acquittal, in all probability gave them to understand by the language quoted that it believed the defendant guilty, and that their verdict should so find. The court further held that this conduct of the trial court constituted prejudicial error, which was not cured by subsequently informing the jury that they were the sole judges of the facts of the case and of the credibility of witnesses. The opinion was written by Mr. Justice De Haven, and in holding that the instruction was an invasion of the province of the jury, for the giving of which the case must be reversed, the learned justice said: "Nothing can be clearer than that in this charge the judge informed the jury that he had a fixed and definite conviction in regard to the verdict which they ought to return, and that in his opinion the evidence to support such conclusion was so plain and satisfactory that honest and intelligent jurors who had heard the testimony ought not to disagree as to its weight and effect, or at least may have understood from these unguarded remarks that in the opinion of the judge the defendant was guilty, and that such should be their verdict.

"When upon the trial of a defendant the evidence is clearly insufficient to justify a verdict of guilty, it is the duty of the judge to so inform the jury, and to advise a verdict of acquittal. This power is sometimes exercised by courts, and is one so frequently invoked in the trial of criminal cases that

its exercise may be regarded as a matter of common knowledge upon the part of jurors of ordinary intelligence and experience, and this fact is not to be lost sight of in considering the impression likely to have been made upon the jury by the charge of the judge in this case. To anyone knowing that it is the duty of the court to advise an acquittal if the evidence is such that, in the opinion of the judge, twelve honest men would have no right to convict, the remarks of the judge in this case could not fail to create the impression that he thought the jury ought to convict upon the evidence before them. But it is not necessary that we should be able to say that the jury must have so understood the charge. Unless it appears that it could not have been so understood, we cannot say that the charge was without prejudice to the defendant. The court has no right, except when advising an acquittal, to give any expression of its opinion as to the weight of the evidence, or to tell the jury that the evidence is so clear that they as honest men ought not to disagree, which is in effect the same as telling them that there is no conflict in the evidence, and that as honest men they can render but one verdict. In a subsequent part of the charge the learned judge did inform the jury that they were the sole judges of all questions of fact and of the credibility of the witnesses, and that the court had no right to trench upon their province in this respect; but the error already noticed in the previous part of the charge was not cured by this subsequent statement. The fact still remained impressed upon the minds of the jurors that there ought to be no disagreement, and that the testimony would justify but one verdict.''

Touching the subject of the independence of the jury in the domain of fact, the supreme court of Alabama, speaking through the chief justice, said: ''It is of the highest importance in the administration of justice that the court should never invade the province of the jury, should give them no intimation as to his opinion upon the facts, but should leave them wholly unbiased by any such intimation, to ascertain the facts for themselves. We cannot shut our eyes to the fact that juries, especially in cases which are strongly litigated upon the facts, watch with anxiety to gather from the court some intimation as to what the judge thinks should be their finding upon the facts. They do not usually fully com-

prehend the line of demarcation which separates the duties of the court from those of the jury. It would not readily occur to one uninstructed in the legal profession why the judge, who is a sworn officer of the law, impartial as between the parties, sitting upon the trial of the cause, and who hears all the evidence, might not with much propriety give his opinion as to the result of the facts. Hence the jury, in the most perfect good faith, are ordinarily inclined to give weight to what they suppose to be the inclination of the mind of the judge upon the facts. But it pertains to the judge to declare the law applicable to the case. He has nothing further to do with the facts than as furnishing the basis for his charge; while the jury are the triers of the facts under the law as given them in the charge by the judge, who upon contested questions of fact should sedulously avoid giving the least intimation as to his own opinion." (*Hair* v. *Little,* 28 Ala. 236.)

The supreme court in this state in an early case discussing this matter said: "The court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression. The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the court, and the great deference which they pay to the opinions and suggestions of the presiding judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the court. A word, a look, or a tone may sometimes in such cases be of great or even of controlling influence. A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts; for of this matter, under our system, they are the exclusive judges." (*People* v. *Williams,* 17 Cal. 147.)

Again, in the latter case of *McMinn* v. *Wheelan,* 27 Cal. 319, referring to this same doctrine it was said: "From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power, by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may, on the one hand, support the character or testimony of a witness, or,

on the other, may destroy the same in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other."

In his work on Constitutional Limitations (seventh edition, page 460—1), Mr. Justice Cooley on this subject comments thus: "The jurors must be left free to act in accordance with the dictates of their judgment. The final decision of the facts is to rest with them, and interference by the court with a view to coerce them into a verdict against their convictions is unwarrantable and irregular. A judge is not justified in expressing his conviction to the jury that the defendant is guilty upon the evidence adduced. Still less would he be justified in refusing to receive and record the verdict of the jury because of its being, in his opinion, rendered in favor of the prisoner when it ought not to have been. He discharges his duty of giving instructions to the jury when he informs them what in his view the law is which is applicable to the case before them, and what is essential to constitute the offense charged; and the jury should be left free and unbiased by his opinion to determine for themselves whether the facts in evidence are such as, in the light of the instructions of the judge, make out beyond any reasonable doubt that the accused party is guilty as alleged."

In a note attached to the foregoing case Judge Cooley remarks: "A judge who urges his opinion upon the facts to the jury decides the cause, while avoiding the responsibility."

If, as stated in the cases from which we have quoted, juries watch with great anxiety to learn what the judge thinks ought to be their finding upon the facts, and, in deference to his opinions and suggestions, readily substitute his decision of the issue for their own, then, in the case at bar, the trial judge, having impliedly urged his opinion upon the facts to the jury, perhaps decided the cause. In any event, "nothing can be clearer than that in this charge the judge informed the jury that he had a fixed and definite conviction in regard to the verdict which they ought to return, and that in his opinion the evidence to support such conclusion was so plain and satisfactory that twelve honest and intelligent jurors who had heard the testimony ought not to disagree as to its weight and effect, and we think the jury understood, from

these unguarded remarks, that in the opinion of the judge the defendant was guilty, and that such should have been their verdict." (*People* v. *Kindleberger,* 100 Cal. 367, [34 Pac. 852].) There is a constitutional prohibition in this state, which has been repeatedly followed in the decision of cases, that judges must not charge juries with respect to matters of fact; much less should judges suggest to or instruct juries what their verdict should be upon the facts.

Other alleged errors are discussed in the briefs. We do not think that any of them are of sufficient gravity to warrant us in reversing the case, and as the cause must be remanded for a new trial for the error that we have just considered, it is unnecessary to refer to them at length, especially as upon the new trial they may not be repeated.

The judgment is reversed, and the cause remanded for a new trial.

Cooper, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 18, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1911.