[Crim. No. 1246.   Second Appellate District, Division Two.—March 2, 1926.]

## THE PEOPLE, Respondent, v. NORMAN SELBY, etc., Appellant.

[1] CRIMINAL LAW—ROBBERY—ASSAULT WITH INTENT TO MURDER—VERDICTS—EVIDENCE—DEFENSE.—In a criminal prosecution based on a set of charges of robbery and a set of charges of assault with intent to murder, growing out of the same series of transactions, the claim of the defendant that there is an inconsistency between the verdicts of the jury acquitting him of the robbery charges and convicting him under the other charges, which claim is based upon the theory that the only defense made by defendant was that he was insane on the day of the happening of said transactions, cannot be sustained, where the record shows that the defendant endeavored to procure a verdict of acquittal under the robbery charges on the ground that the prosecution had not made the requisite proof of intent to steal, and the record contains ample support for that view and also for the view that the jury rejected the defense of insanity as to all the charges.

[2] ID.—DELIBERATION OF JURY—ADDITIONAL INSTRUCTION—VERDICTS NOT COERCED.—In such prosecution, where the jury, after having deliberated for about seventy-one hours, returned to the courtroom, and the trial court read to them an instruction, the fact that the jury returned verdicts of guilty on certain charges two and one-half hours after the giving of such instruction does not show that they were coerced into their verdicts.

[3] ID.—INSTRUCTION—PROPRIETY OF.—In such prosecution, such addi-
tional instruction which in effect did nothing more than to tell
each member of the jury that he should not finally make up his
mind until, he had heard the arguments of his fellows upon the
questions which they were to decide was not objectionable.

---

(1) 16 **C. J.**, p. 1108, n. 37.   (2) 17 **C. J.**, p. 215, **n.** 33.   (3) 16
**C. J.**, p. 1091, **n.** 83, p. 1092, n. 95.

APPEAL from judgments of the Superior Court of Los
Angeles County and from an order denying a new trial.
Chas. S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve and Woolwine & Giesler for
Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy
Attorney-General, and James S. Howie, for Respondent.

WORKS, J.—Defendant was charged, by an indictment in
seven counts, with seven separate offenses, one being alleged
in each count. In four of the counts he was charged with
robbery. In the remaining three he was charged with as-
saults with intent to murder. He was acquitted under each
of the counts charging robbery. He was found guilty as
charged under two of the three remaining counts and guilty
of an assault with a deadly weapon under the third. He
appeals from the judgments and from an order denying his
motion for a new trial.

Appellant was concerned in certain transactions which
occurred not far from midnight, between August 12 and
13, 1924. Out of these transactions a charge of murder was
made against him. The events out of which grew the seven
charges above mentioned took place early on the morning of
the 13th. They commenced with the arrival of appellant at
a store in which the woman with whose murder he was
charged, with her husband, had an interest. There is much
evidence in the record which tends to prove that appellant
went to the store to ''get'' the husband, against whom he

---

3.  See 8 Cal. Jur. 374,

entertained an intense feeling of hatred. Appellant arrived at the store a few minutes before it was opened for business and when that event occurred he entered the place. He was highly excited at the time. There is evidence which tends to show that he was drunk. There is other evidence which tends to prove that he was insane. After he had gotten into the store he inaugurated a reign of terror over the people in the establishment, consisting of both men and women. He menaced them with a "gun" which he carried and made frequent threats to shoot them after he had gotten through with the husband of his alleged victim under the murder charge and whose arrival on the scene he was awaiting. Under the fear inspired by his pointed weapon, and through blows administered by him in one or two instances, he compelled some of the people in the store to deliver to him their personal belongings. He forced some of the men present to take off their trousers and shoes, but he did not appropriate these articles. While appellant was in the store he gave money to the porter who was employed there, and also to an individual who answered appellant's command to disgorge with the statement that he had nothing. One of the men ran out of the place in an endeavor to escape and appellant fired a shot at him as he went through the door. Appellant pursued the fleeing individual and before he could return one of the occupants of the premises locked the door. This is but a skeleton statement of the events which transpired in the establishment, as they were extended over a period of an hour or two. Out of them arose the four charges of robbery and one of the charges of assault with intent to murder.

Immediately after appellant was locked out of the store he went to another place of business near at hand, which was kept by a man and his wife. Appellant knew the wife, but not the husband. As he entered the place he asked that the husband be pointed out to him and upon the request being complied with he fired a shot at that individual. He then turned and fired at the wife, the shot striking her in the hip. He fired another shot at her which did not take effect, and left the place. Out of these events arose two of the charges of assault with intent to murder.

[1] Appellant contends that the verdicts of the jury acquitting him under some of the charges contained in the indictment and convicting him under the others are incon-

sistent. His position is based upon the theory that the only defense made by appellant was that he was insane on the day of his most unusual escapade. It is said that when the jury acquitted him of a part of the charges it found that he was insane, but that when he was convicted under the remaining charges it was found that he was sane. It is in this sense that it is said that the two sets of verdicts are inconsistent with each other.

Unfortunately for appellant's contention the record does not bear out the assertion that insanity was the sole defense presented at the trial. Appellant requested the court to instruct the jury as follows: "To establish the offense of larceny from the person which under the law is grand larceny, and which is an offense included in the offense of robbery as charged in the first four counts of the indictment, it is necessary for the prosecution to prove, beyond a reasonable doubt, not only that the defendant at the time of the securing of the property was actuated by a felonious intent to steal and convert said property to his own use, but they must also prove to your satisfaction and beyond a reasonable doubt that the defendant, at the time of stealing said property, if you find that he did steal it, intended to deprive the owner thereof of the same permanently, and not merely temporarily. The test of law to be applied to the facts and circumstances for the purpose of determining the ultimate facts as to a man's intent in this respect is—did he intend to permanently deprive the owner of his property? If he did not intend so to do, there is not that felonious intent which is a necessary part of the crime of grand larceny. The intent must in all cases be an intent to deprive permanently the owner of his property." This proffered instruction was not given as requested, but was read to the jury in the following modified form: "To establish the offense of larceny from the person, which under the law is grand larceny, and which is an offense included in the offense of robbery, it is necessary for the prosecution to prove, beyond a reasonable doubt, that the defendant at the time of the securing of the property was actuated by a felonious intent to steal said property including the intent to deprive the owner thereof of the same permanently, and not merely temporarily."

It is plain from the instruction requested by appellant that he saw in the evidence a possible failure upon the part of

the prosecution to prove that he had taken the belongings of the prosecuting witnesses with intent permanently to deprive them of their property, and that he endeavored to procure a verdict of acquittal under the charges of robbery, or under charges included within them, on that ground. In giving the proffered instruction as modified it appears that the trial judge adopted the same theory as to the evidence. We ourselves can perceive in the record an ample support for that view. It is quite probable that the jury held the same view and acquitted appellant under the robbery charges on the ground that the prosecution had not made the requisite proof of intent. The claim that the verdicts were inconsistent, therefore, falls to the ground. The record provides ample support for the view that the jury rejected the defense of insanity as to each of the seven charges.

[2] The deliberations of the jury over their verdicts were extended over a long period of time. After nearly seventy-one hours had elapsed without a conclusion of its labors being reached the jury returned to the courtroom. What then transpired is shown by the minutes of the court: "Defendant, counsel and jury present at 2:10 P. M., jurors ask for further information. Additional instruction is given and indictment is read by the clerk." The "additional" charge which the trial judge then read to the jury was in the following language: "It sometimes happens that when jurors enter the jury-room they make emphatic expressions of the opinions they have in the case and of their firm determination to adhere to them. Such emphatic declarations of opinions are rarely productive of good. By their emphatic expression of opinion, a sense of pride is enlisted and a juror subsequently, though advised that the position he has announced is not tenable, hesitates from receding from that position, for the reason that he has already expressed his determination to adhere to it. I would advise you, ladies and gentlemen, to hold your minds in a state of abeyance for a while, so you may fully and freely interchange views with each other and each individual juror hold his mind so open that he may receive the suggestions and remarks of his fellow jurors and that his remarks may be entertained and received in the same spirit. I think that by observing this rule, interchanging fully between yourselves your views upon the evidence, that there is more likelihood

you will reach a verdict than if you made an emphatic expression of the position you have assumed. You will remember, ladies and gentlemen, in matters of this character it is advisable, both for the interests of the State and the benefit of the defendant, that a verdict should be returned, that there should be a conclusion of the trial; and you are to remember, too, that you are not partisans in this matter, but you are judges, and that it is not with the opinion with which you retire, but with the verdict with which you return that the correctness of your deliberation is to be estimated; and that, in your deliberations in the jury-room, there can be no triumph excepting the ascertainment and declaration of the truth.''

It is contended that when this supplemental instruction was given "the jury was misinstructed as a matter of law and coerced into bringing in a compromise verdict.'' In support of this claim of error appellant calls attention to the period of seventy-one hours which had passed when the jury returned to the court, and he also points to the further fact that the trial body returned with its verdicts two and one-half hours after the additional charge had been given. These circumstances are not evidence that the jury was coerced into a conclusion of its labors. Naturally, there is nothing in the record to show what stage in its performance of duty had been attained when it came in for further instructions. As against the circumstances cited by appellant we may justly indulge any one of several assumptions. These are that when the jury came into court for additional instruction: 1. It had come to a conclusion under all of the charges except one and that it had proceeded far in its deliberations as to that one. 2. It had come to a conclusion as to all of the charges under which it later declared that appellant was innocent and had proceeded far in its deliberations as to the remaining charges. 3. It had come to a conclusion as to all of the charges under which it later declared that appellant was guilty and had proceeded far in its deliberations as to the remaining charges. As it is incumbent upon an appellant in every appealed cause to show error in order to bring about a reversal, we here may properly make any of these assumptions for the reason that appellant shows us nothing to contradict any of them. The circumstances relied upon by appellant do not therefore

avail him to show a coerced verdict, either as a matter of
fact or as a foundation upon which to discuss, as a matter
of law, the alleged error in the giving of the challenged in-
struction. Under any one of the three possible assumptions
stated above it is not surprising that the jury returned its
verdict within two and one-half hours after the instruction
was given, notwithstanding the fact that the instruction
was read seventy-one hours after the jury had first retired
to commence its deliberations.

Several cases are cited in support of appellant's conten-
tion that the supplemental instruction was an incorrect state-
ment of the law governing the conduct of jurors during
their deliberations in the jury-room. The first of these is
*People* v. *Miles,* 143 Cal. 636 [77 Pac. 666], but there the
court upheld the judgment which was sought to be reversed
because of the giving of the instruction which was assailed.
The portion of the report upon which appellant relies is
found in a concurring opinion containing a cautionary state-
ment as to the giving of like instructions to that in question
in the future. In *People* v. *Conboy,* 15 Cal. App. 97 [113
Pac. 703], after quoting the instruction to which objection was
made, the court said: "These remarks amounted to a plain
intimation that the court thought the evidence in the case war-
ranted a verdict of guilty, and that the jury should so find."
We can see no such objection to the instruction here in ques-
tion. *People* v. *Carder,* 31 Cal. App. 355 [160 Pac. 686], in
the reasons which the court gave for condemning the ques-
tioned instruction, was much like *People* v. *Conboy.* The court
said: "We think it quite apparent that from the statements
of the learned trial judge the jury must have concluded
that he was convinced of the defendant's guilt and that as
honest men it was their duty to so find." In *Peterson* v.
*United States,* 213 Fed. 920 [130 C. C. A. 398], the ques-
tioned instruction was objectionable principally because the
trial judge practically told a minority of the members of
the jury that they should yield their views of the cause to
that of the majority. We can perceive nothing in any of
these decisions which aids appellant here.

[3] Upon principle we think there is no valid objection
which can be made to the instruction which now lies before
us. The trial judge did nothing more than tell each member
of the jury that he should not finally make up his mind

76 Cal. App.—46

until he had heard the arguments of his fellows upon the questions which they were to decide. We are convinced by the language employed by him that such was his purpose. What the judge said as to the tenacity with which men cling to opinions to which they have given forcible expression was intended to effectuate this purpose, and that portion of the instruction enunciated a truth to which it is difficult to apply even an apparent refutation. Every man who has ever sat upon a court of review, every man who has spent any considerable time in the performance of any species of mental teamwork with other men, knows the danger which lies in the early formation and in the dogmatic expression of views of any member of the team before the other members have been heard. The legislature has shown that it appreciates the existence of this truth. "If the jury are permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court . . . that it is their duty not to form or express an opinion thereon until the case is finally submitted to them" (Code Civ. Proc., sec. 611). We can see no objection to the course taken by the trial judge in conveying the same idea to the jury, to the limited extent to which he did convey it, after the cause had been submitted to its members and in the midst of their deliberations, especially under the circumstances which arose for his consideration. The jury asked for further "information." We must assume that the supplemental instruction responded to this request, which, necessarily, was stated to the judge more circumspectly than it is set forth in the minutes. Suppose—and we may justly assume—that it was stated to the judge that some juror, on entering the jury-room the first time had expressed what he said was his final view upon some particular point in the case and for seventy-one hours had refused to hear the views of his fellows upon it. Was not the instruction proper for the purpose of removing such an obstacle to the work of the jury? If it was proper in such an extreme case it was proper in general, for the language employed by the court shows that it was designed to fit some such situation, although perhaps less extreme in its nature. These views find some support in *People* v. *Rhodes,* 17 Cal. App. 789 [121 Pac. 935], and *People* v. *Cherry,* 30 Cal. App. 285 [158 Pac. 335].

Since the foregoing was prepared and filed our attention has been called to *People* v. *Valencia,* 32 Cal. App. 631 [163 Pac. 865], in which the instruction which is quoted above was upheld.

Judgments and order affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1926.