[Crim. No. 1144. Department Two.—June 20, 1904.]

## THE PEOPLE, Respondent, v. THOMAS J. MILES, and S. S. DINWIDDIE, Appellants.

CRIMINAL LAW—TRIAL—ADVICE BY COURT TO JURY—SAVING OF EXPENSE TO COUNTY BY AGREEMENT.—Where the jury in a criminal case had announced to the court the inability of the jurors to agree upon a verdict, it was not error for the court to call their attention to the great additional expense to the county of another trial, and to urge that they, as taxpayers, should seek to avoid such expense and to agree upon a verdict if possible. This was but a statement of what the jurors were presumed to know, and involved no intimation as to any opinion of the court as to how they should decide.

ID.—INSTRUCTIONS—PRESUMPTION OF INNOCENCE.—Though a requested instruction that the presumption of innocence of the defendants remained with them from the commencement to the close of the trial should have been given, yet where the court instructed the jury that the burden of proof was upon the prosecution, and that the defendants are presumed to be innocent until their guilt was established by proof beyond a reasonable doubt, the jury as reasonable men of ordinary intelligence must have known that the presumption of innocence mentioned by the court continued throughout the trial, and there was no injury to the defendants from refusal of the requested instruction.

ID.—INSTRUCTION AS TO CIRCUMSTANCES SURROUNDING WITNESS.—The court in instructing the jury as to the circumstances or facts surrounding a witness in testifying, is not limited to the circumstances enumerated in section 1847 of the Code of Civil Procedure, and it was not improper to state that the jury might scrutinize not only the manner of the witness while on the stand, his relation to the case, and other facts, but also "his degree of intelligence."

ID.—VIOLATION OF FISHING LAW—USE OF SET-NET IN SLOUGH.—Under the Fishing Law prescribed in section 636 of the Penal Code, the use of a set-net in any waters of the state is forbidden, and it is not material whether the waters have a current or tide. A net in a slough connected with a navigable river must be left free to drift, and not be set or permanent.

APPEAL from a judgment of the Superior Court of Sutter County and from an order denying a new trial. K. S. Mahon, Judge.

The facts are stated in the opinion.

A. L. Shinn, T. K. Christianson, and A. H. Hewitt, for Appellants.

U. S. Webb, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

CHIPMAN, C.—Defendants were convicted on an information charging that on August 22, 1903, they were guilty "of the crime of setting and using a set-net in the waters of the state for the purpose of catching fish (a misdemeanor) committed as follows: That said [naming the defendants and the date] did, then and there willfully, unlawfully and feloniously in the waters of the state of California, to-wit, in the Sacramento Slough, in the said county of Sutter, . . . set and use a certain set-net, that is a net which was then and there secured and was not free to drift with the current and with the tide, for the purpose of catching fish, . . . contrary to the form," etc.

The trial court denied defendants' motion for a new trial and entered judgment on the verdict. Defendants appeal from the judgment and order.

1. The jury retired to consider their verdict some time in the forenoon. They came into court for further instructions as to the form of the verdict they might return. Again, a second time, they came into court and stated that they had come to an agreement as to one of the defendants, and passed up the verdict to the court. Counsel for defendant objected to the reading of the verdict unless it was as to both defendants. The trial judge told the jury that he could receive the verdict, but he thought they should attempt to arrive at a verdict in both cases if they could do so, inasmuch as they had not been out long. The instructions were again read to the jury and they retired. This was just before noon. The jury came in a third time at ten minutes past three and informed the court that they had changed their mind as to the partial verdict and had then not agreed on any verdict. A juryman informed the court of the number of ballots taken and how the last vote stood. The court said to them that he thought they "would be able to arrive at some kind of a verdict." The sheriff was instructed to provide supper for them, as they had no dinner, and they again retired. A fourth time they returned into court, but at what time does not appear except that it was before six o'clock. The foreman informed the court that there had been no agreement and he did not

think it possible that they would agree. Another juryman thought it doubtful. Another juryman said the last ballot showed a change. Another juryman said there was some disagreement as to the testimony of one of the witnesses and it was read to the jury. Another juror said there might be a change after a while. Another said: "I think we had better try it once more." *The Court.*—"I think so, too. It seems there has not been a full discussion of the matter, from what has been said and from the changes that have been made." The court told the jury "that it costs several hundred dollars to get a jury together to try a criminal case. It is an expensive matter. If there is a mistrial in a criminal case the district attorney may bring it on for trial again, and a great expense attaches to the trial of such cases. . . . If you think there is any possibility of arriving at a verdict, and thus saving the county the expense of a retrial, I am willing to read the instructions to you again. . . . It will save a good deal of expense if this case can be finally determined by this jury, but, as I said before, I have no desire to force you to retire again to the jury-room if there is no possibility of your arriving at a verdict. . . . You are all taxpayers,—you would not be in the jury-box if you were not all on the assessment-roll of the county,—and it should be your desire more than that of any others that the county should be saved as much expense as possible." A juryman offered to show the trial judge the different votes taken. *The Court.*—"I do not wish to see it. All I want to know is whether there is a probability of your arriving at a verdict as to both of the defendants or as to one of them. You must arrive at a verdict if you do at all solely from the evidence and the instructions given you, not from any convenience to any of you or any inconvenience to any of you by reason of being kept in the jury-room."

The jury retired, and later (at what hour does not appear) returned a verdict of guilty as to both defendants. It is claimed that the reasons given in *People* v. *Kindleberger,* 100 Cal. 367, are equally applicable here. In the Kindleberger case this court held that the remarks of the trial judge indicated that he viewed the evidence as pointing to defendant's guilt. No such inference can be drawn from the remarks of the court in the present case. No intimation what-

ever was given as to how the court regarded the evidence; its whole purpose was to require a reasonable effort on the part of the jury to come to some conclusion one way or another, and not cause a mistrial. In reminding the jury of the expense of the trial, and the desirability to them as taxpayers of avoiding a repetition of this expense, was saying no more to them than they as taxpayers and intelligent men must be presumed to have known without being told by the court. In *Niles* v. *Sprague,* 13 Iowa, 198, the trial court told the jury the case had been twice tried, and that it was important that they should agree. The appellate court said: "To this action or remark we can see no just ground of objection. If improper, it was as much so to defendants as to plaintiffs. But it was so to neither. It was not only right, but the duty of the court to remind the jury of the protracted litigation and of the necessity on their part to labor honestly and faithfully to arrive at a verdict and thus terminate a controversy which time only tended to make more expensive and embittered. There was no intimation as to how they should decide, but a general remark that they ought to agree if they could satisfy their minds." In another case the jury were told that the case had been long pending and had been exhaustively tried; that a new trial would entail large expense, etc., and in view of these facts they were directed to return to their rooms and examine their differences in a spirit of fairness; etc. The court said: "But we fail to discover either error or prejudice in any of it. What the court said was abundantly true and practical and ought to have occurred to the jury without the necessity of having it said to them by the court." (*Frandsen* v. *C. R. I. and P. R. Co.,* 36 Iowa, 372.) These were civil cases, and there was no suggestion to the jurors that the expense of the trial might fall upon them as taxpayers. We cannot see, however, that this fact would change the reason for upholding the admonition of the court. The point is, that it was proper for the court to urge the importance of reaching a verdict, and as it intimated no opinion of its own or suggested how the verdict should go, the defendants were not prejudiced. Indeed, the jury were quite as likely to find for the defendants as for the people under such an admonition. Nor can we say but that the jury were influenced by the re-reading of some of the testimony and not

by the remarks of the court. (See the question discussed and cases cited: 1 Blashfield's Instructions to Juries, p. 454 et seq.

2. Defendants asked an instruction as to the presumption of innocence, and that this presumption attached at the commencement of the trial and remained until its close.

The court had given an instruction that the burden of proof was on the prosecution, and that "the defendants are presumed to be innocent until their guilt is established by proof," and that they are "entitled to the benefit of any and all reasonable doubts, and cannot be convicted of any crime unless the jury are convinced by the evidence in the case beyond all reasonable doubt," etc. Defendants' proposed instruction was refused on the ground that it had been substantially given. It is urged that defendants were entitled to have the jury instructed that the presumption of innocence remained with them to the close of the trial. If the instruction given by the court left any doubt in the minds of the jury, or was open to the inference that this presumption of innocence did not abide with defendants throughout the trial, we think prejudice would appear in refusing the instruction asked. Indeed, we think the court should have given it in the form requested. (*People* v. *Winthrop,* 118 Cal. 85, and other cases.) At the same time, as reasonable men of ordinary intelligence, the jurors must have known that the presumption of defendants' innocence mentioned by the court had reference to the entire trial and to all the evidence there adduced. Defendants were therefore not injured by the ruling of the court.

3. Instruction VIII is an extension somewhat of the points relating to the testimony of witnesses suggested in section 1847 of the Code of Civil Procedure, as to which the jury may be instructed. In enumerating the circumstances or facts that may surround a witness in testifying, the court stated that the jury might scrutinize not only his manner while on the stand, his relation to the case and other facts, but also "his degree of intelligence." The court was not limited to the circumstances enumerated in section 1847. (*People* v. *Amaya,* 134 Cal. 531, 540.) The intelligence of witnesses may well be taken into consideration as having some bearing upon the amount of credence to be given this testimony. To what extent the relative amount of intelligence among witnesses

should influence the minds of the jury as to any particular fact testified to is for them to determine.

4. Defendants asked an instruction to the effect that there could be no conviction if the Sacramento Slough, mentioned in the information, at the time charged had neither current nor tide. The court refused the instruction, and defendants now urge this as error. The information is laid under section 636 of the Penal Code, which provides in part as follows: ". . . Every person who shall set, use, or continue, or shall assist in setting, using, or continuing any pound weir, set-net, trap, or any other fixed or permanent contrivance for catching fish in the waters of this state—and every net shall be considered a set-net that is secured in any way and not free to drift with the current or tide—is guilty of a misdemeanor," etc. It is contended that the jury should have been told that unless there was a current or tide there could be no offense under this section. There was evidence that this slough empties into the Sacramento River about a half mile above the mouth of Feather River; is three or four miles in length, about one hundred feet wide at its mouth, and twelve feet deep, and about eighty feet wide where defendants' net was set. Except in midsummer, this slough drains the back country lands into the river, but in August the water of the slough has no perceptible current. Fish may and do pass freely up and down the slough from the river. The ownership of the lands bordering on the slough does not appear. Defendants offered to prove the ownership, but the court held the evidence to be immaterial, and no objection was made or exception taken to the ruling. Upon the authority of *People* v. *Truckee Lumber Co.*, 116 Cal. 397:[1] "The dominion of the state for the purpose of protecting its sovereign rights in the fish within its waters, and their preservation, for the common enjoyment of its citizens . . . extends to all waters within the state, public or private, wherein these animals are habited or accustomed to resort for spawning or other purposes, and through which they have freedom of passage to and from the public fishing-grounds of the state. To the extent that the waters are the common passageway for fish, although flowing over lands entirely subject to private ownership, they are deemed for such purposes public waters, and subject to all laws of the

---

[1] 58 Am. St. Rep. 183.

state regulating the right of fishing." (Citing cases.) Whether or not the water of this slough, at the particular time defendants had their net set across it, was subject to movement by current or tide, is immaterial. They were forbidden by the law to use a set-net "in the waters of this state"—i. e. in any of the waters coming within the regulating power of the state concerning the fish therein. The parenthetical words "free to drift with the current or tide" are but descriptive of the condition of a net; it must be free to drift and not be set or permanent.

It is advised that the judgment and order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

McFARLAND, J.—I desire to say further that while upon the record in this case it appears that appellants were not prejudiced by the guarded expressions of the court to the jury on the subject of their efforts to agree, still such expressions are hazardous, and it would be better for the court to say nothing on that subject. There might be cases where such remarks would be construed by the jury as urging an agreement to convict.