[Crim. No. 349. First Appellate District.—January 4, 1912.]

# THE PEOPLE, Respondent, v. CARL RHODES, Appellant.

CRIMINAL LAW—MURDER—REFUSAL OF REQUESTED INSTRUCTIONS AS TO
    MANSLAUGHTER—EVIDENCE NOT IN RECORD—PRESUMPTION AGAINST
    ERROR.—Where the appeal is from the judgment upon a conviction
    of murder in the second degree, without bringing up any testimony,
    there appearing to be no evidence before the jury tending to prove
    a case of manslaughter, it does not appear that there was error
    in refusing requested instructions upon the subject of manslaughter.
    The appellant must affirmatively show error in the action of the
    trial court; and where it does not and cannot appear affirmatively
    that the court was not justified in refusing to give any instructions
    upon the subject of manslaughter, it must be presumed that no
    error was committed in refusing them.

ID.—DELAY IN PRONOUNCING JUDGMENT AFTER VERDICT—JURISDICTION
    NOT LOST—QUESTION OF ERROR.—The court did not lose jurisdiction
    to render judgment upon the verdict, by reason of the fact that it
    was not pronounced until after the expiration of more than five days
    from the rendition of the judgment, even if no continuance was had
    for any purpose authorized by section 1191 of the Penal Code; but,
    in such case, it was only matter of error to be reviewed upon appeal,
    if shown affirmatively.

ID.—DELAY PRESUMED FOR PURPOSE OF HEARING MOTION FOR NEW
    TRIAL.—Where the record shows that, upon the rendition of the
    verdict, the court fixed the time for pronouncing judgment upon
    the tenth day thereafter, which was within the time allowed by
    section 1191 of the Penal Code, where such extension was granted
    for the purpose of hearing a motion for a new trial, and it appears
    that at the time appointed for rendition of the judgment a motion
    for a new trial was made and denied, and that judgment was there-
    upon rendered, although there is nothing in the record to show
    that the continuance of the judgment was made for that purpose,
    yet it must be presumed that the court acted regularly, and that
    the continuance was for such purpose.

ID.—REMARKS OF COURT AS TO DETENTION OF JURORS FOR AGREEMENT—
    IMPORTANCE OF CASE—ABSENCE OF COERCION OR PREJUDICIAL ERROR.
    Where the jury reported to the court the general condition of their

votes and their inability to agree, without stating the particulars of their votes, and the court detained them for further consideration of the case, until they finally rendered a verdict, with remarks, when so detaining them, which, when considered as a whole, were clearly intended as an explanation of the reason for detaining them as he did, and to impress upon them that the case was an important one, requiring their careful and dispassionate consideration, and wherein some sort of a verdict should be rendered, without indicating that it should be a verdict of guilty, there was no indication of coercion, or of prejudicial error, in such remarks, and the verdict should not be set aside on those grounds.

APPEAL from a judgment of the Superior Court of Monterey County. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

B. A. Herrington, for Appellant.

U. S. Webb, Attorney General, for Respondent.

HALL, J.—Defendant was convicted of murder in the second degree, and has appealed from the judgment without bringing up any testimony. The appeal is before us upon the record provided for by section 1246 of the Penal Code only.

The first point urged for a reversal is that the court erred in refusing to give instructions, requested by defendant, upon the question of manslaughter.

Unless there was evidence before the jury tending to prove a case of manslaughter, it was not error to refuse to give any instruction upon that subject. (*People* v. *Byrnes,* 30 Cal. 207; *People* v. *Lee Gam,* 69 Cal. 552; *People* v. *Turley,* 50 Cal. 469; *People* v. *Estrado,* 49 Cal. 171; *People* v. *Fellows,* 122 Cal. 233, [54 Pac. 830]; *People* v. *Chaves,* 122 Cal. 140, [54 Pac. 596].)

It is necessary for the appellant to affirmatively show error in the action of the trial court before this court will reverse the judgment or order appealed from. (*People* v. *Russell,* 156 Cal. 450, [105 Pac. 416].)

There being no evidence in the record before us, it does not and cannot appear affirmatively that the court was not perfectly justified in refusing to give any instruction upon the question of manslaughter, and we must presume that no error

was committed in refusing such instructions. (*People* v. *Clark,* 121 Cal. 633, [54 Pac. 147].)

The fourth point urged for a reversal is that the court lost jurisdiction to render judgment by reason of the fact that judgment was not pronounced until after the expiration of more than five days after the rendition of the verdict, although, as it is claimed, no continuance was had beyond such time for any purpose as authorized by section 1191 of the Penal Code. But the rendition of judgment upon a verdict of conviction after a continuance for a longer time than is permitted by section 1191 of the Penal Code is not an act in excess of jurisdiction, but is error to be reviewed upon appeal only. This is the rule laid down in *Rankin* v. *Superior Court,* 157 Cal. 189, [106 Pac. 718], where a writ of prohibition was refused for the reason that the rendition of judgment under such circumstances would not be in excess of jurisdiction, but an error only, to be reviewed upon appeal.

Treating the action of the court as a possible error, appellant is again met by the rule that it is incumbent upon him to affirmatively show error. This he has failed to do. The record shows that upon the rendition of the verdict the court fixed the time for pronouncing judgment upon the tenth day thereafter. This was within the time allowed by section 1191 of the Penal Code, where such extension is granted for the purpose of hearing a motion for a new trial. At the time appointed for the rendition of judgment a motion for a new trial was made and denied and judgment thereupon rendered. While it does not affirmatively appear that the time for pronouncing judgment was extended to ten days for the purpose of hearing such motion for a new trial, it does not affirmatively appear that the extension was not made for such purpose, and we must therefore presume that the court acted regularly, and that the continuance was for such purpose. (*People* v. *Scott,* 13 Cal. App. 301, [109 Pac. 498]. Petition for rehearing in supreme court denied June 23, 1910.) It therefore does not appear that the court erred in pronouncing judgment on the tenth day after the rendition of the verdict.

The only other points relied upon for a reversal are that the court, by certain remarks that it made in the presence of the jury, coerced the jury into rendering a verdict, and that

it also in effect charged them that they should render a verdict of conviction.

As the facts upon which these contentions are predicated are closely connected it is convenient to consider them together.

The cause was submitted to the jury at 5:25 P. M. of the third day of the trial. At 9 P. M. of the same evening the jury were brought into court, and in answer to questions put by the court the foreman stated that they were numerically divided on their verdict seven to five, and that they had taken several ballots, the last three or four being the same—seven to five. Whereupon the court said, "Mr. Sheriff, prepare the beds in the jury-room. The court will be here at any time before 11, providing you agree upon a verdict. Mr. Clerk, make an order that the sheriff take the jury out to breakfast, dinner and supper until the further order of the court."

At 9:50 A. M. the next day the jury was again brought into court, and the court, after learning that upon their last ballot they stood eight to four, said: "It strikes the court, gentlemen, that this is a case wherein a verdict should be arrived at, and it seems to be my duty to keep you locked up until such time as you have had ample opportunity to deliberate on your verdict. It has not been my habit to keep the jurors too long, but this is an important case, and I think a verdict should be arrived at. You will be sent back to the jury-room, and the court will be within call at any time during the day."

At 1:55 P. M. of the same day the jury was brought into court, and stated that they stood seven to five, and for the first time stated that "There is no possible chance for a verdict." Whereupon the court said: "The court may differ with you upon that subject. A case of this kind, involving as much as it does, it is the duty of the jury to reconcile their views as much as possible, and for that reason it is the duty of the court to give them ample time to deliberate upon a verdict. The case is one in which some sort of verdict should be arrived at, and I deem it nothing but my duty to see that the jury endeavor to arrive at a verdict. I am not keeping the jury in the box as a mere matter of feeling, but I think it is my duty to assist them as much as possible to finally come to an understanding, and for that reason I feel it incumbent upon me to keep you there. I shall send you back to

the jury-box, gentlemen. I told you that I shall be within call until 11 o'clock to-night. I will say further that you, in discussing this matter among yourselves, it is your duty to argue it dispassionately, and carefully consider all the testimony that was introduced before you, and the instructions that have been given you by the court, allow no personal feeling among yourselves. Sometimes jurors get passionate and quarrel among themselves, but this party of men seem to be too intelligent to do anything like that, and you should discuss the matter dispassionately, and if you desire to see me at any time prior to 11 o'clock to-night, I shall be on hand.''

The jury again retired, and at 3:30 P. M. of the same day returned a verdict of murder in the second degree, with a request for the extreme mercy of the court.

We do not find anything of coercion toward the jury in the action of the court. It is true that the jury understood from the remarks of the judge that he intended to give the jury ample time to carefully consider the case. At the outset they learned from the directions given to the sheriff and clerk that they would be made as comfortable as possible. At no time prior to 1:55 P. M. of the day upon which the verdict was returned was it stated by any of the jurors that a verdict could not be reached. A verdict was reached within less than two hours thereafter, and within about twenty-two hours from the submission of the cause to the jury. Neither do we think that by any of the remarks made by the court the case was brought within the rule laid down in *People* v. *Kindleberger,* 100 Cal. 367, [34 Pac. 852], and followed in *People* v. *Conboy,* 15 Cal. App. 97, [113 Pac. 703].)

While the court did say that he thought some sort of a verdict should be rendered, there is nothing to indicate that he thought that such verdict should be one of guilty. The court did not know how the jury stood at any time except that it was divided numerically in certain proportions. The remarks of the court, when taken as a whole, were evidently intended as an explanation of why he detained them as he did, and to impress upon them that the case was an important one requiring careful and dispassionate consideration.

The facts disclosed by this record are similar in their essential features to the facts in *People* v. *Miles,* 143 Cal. 636, [77 Pac. 666], where a verdict of conviction was affirmed, and

where the court said: "That it was proper for the court to urge the importance of reaching a verdict, and as it intimated no opinion of its own or suggested how the verdict should go, the defendants were not prejudiced."

In both *People* v. *Kindleberger* and *People* v. *Conboy* the remarks of the court and the circumstances under which they were made were such as to intimate that the court thought that the jury should find a verdict of guilty. In the case at bar the court told the jury that it thought some sort of a verdict should be reached, and this was said in connection with remarks about the importance of the case, and not, as in the Kindleberger and Conboy cases, in connection with remarks pointing to the clearness and satisfactory character of the evidence.

We do not think that the defendant was or could have been prejudiced by the remarks of the court, and the judgment should not be reversed because thereof; yet we agree with what the late Justice McFarland said in concurring in the judgment of affirmance in *People* v. *Miles,* 143 Cal. 636, [77 Pac. 666], to the effect that such remarks are hazardous and should be avoided.

The judgment is affirmed.

Kerrigan, J., and Lennon, P. J., concurred.