[Crim. No. 1442.   First Appellate District, Division One.—April 2, 1928.]

THE   PEOPLE,   Respondent,   v.   DICK   PISCITELLA, Appellant.

Edward M. Fellows for Appellant.

U. S. Webb, Attorney-General, and Lionel B. Browne, Deputy Attorney-General, for Respondent.

CASHIN, J.—Defendant was charged by an information with the crime of burglary and upon trial was convicted. An appeal was taken from the judgment, and it is urged as grounds for reversal that the evidence was insufficient to support the verdict, that certain remarks of and an instruction by the trial court to the jury, and a ruling upon the admissibility of testimony offered by the defendant were prejudicially erroneous.

According to the testimony of Frank Lauricella, a witness for the prosecution, he with the defendant and one di Bello, at about 1 o'clock A. M. of December 25, 1926, entered a feed store conducted by Paul Cribari in San Jose, with the intent to remove therefrom a safe containing a sum of money, the safe and its contents being owned by Cribari.

An entrance was effected by opening a window, through which they were enabled to unlock the door of the building. After entering it was found that owing to its weight they were unable to remove the safe. They then left the building and drove in an automobile to a resort in San Jose, where they met and procured the assistance of John Taminelli and Tony Barelona. Following this meeting and on the same night the three first mentioned, accompanied by Taminelli and Barelona, again visited the building. On this occasion the lock of the door was broken by di Bello. An entry was again made and, all the parties assisting, the safe was placed in the automobile and carried away. Tony Barelona was also called as a witness for the prosecution, and testified to meeting the defendant with di Bello and Lauricella in front of the resort referred to by the latter, and that the three last mentioned were seated in an automobile owned and driven by the defendant; that at the request of the occupants of the automobile the witness entered the same and was driven by the defendant to the Cribari premises. He further testified to a conversation had between the parties previous to their arrival at the Cribari place, his testimony in this connection being as follows:

"Q. After you got into the car where did you go, any particular place? A. No. Q. Where did you go? A. Drove around the block a couple of times and we stopped. I don't know whether it was the second or third street where Paul Cribari's was. Q. Before you went out to Second street was there any conversation occurred? A. I heard someone say in the car—I don't know whether it was Dick—they went there the first time, somebody said they went out, could not do it, and they came over and got Jack Taminelli and myself. Q. What did they say they could not do? A. They could not lift the safe or something. Q. Did they say why they came to see you? A. After I was in the car they said they came over for me and Jack to help them because they could not lift the safe. Q. When was the first time you knew anything about the burglary? A. That was the same night. Q. The same night. You mean when they came to get you? A. Yes. Q. Was that the first time that you heard of it? A. Yes. . . . Q. At the time you had the conversation, going back a moment, in the automobile going

down there who was present at that time and heard the conversation? A. All of us. Q. By 'all' you mean who? A. Dick Piscitella, Frank Lauricella, Joe di Bello and John Taminelli and myself.''

The witness further testified that after his arrival at the Cribari premises he assisted the defendant and the others in removing the safe, his description of this transaction being in substantial agreement with the testimony of Lauricelli. Other witnesses testified to having seen Lauricelli and the defendant together in the latter's automobile shortly before 2 o'clock on the morning the offense was committed.

At the close of the case for the prosecution the district attorney elected to rely for a conviction upon the first entry into the building, and it is urged by the defendant that the corroboration of the testimony of the witness Lauricella, who admittedly was an accomplice in the commission of the offense, was not sufficient to justify a conviction.

The only evidence in corroboration of that given by the witness Lauricelli which raised more than a suspicion of guilt was that of Barelona; and it is contended that the latter was also an accomplice, and, further, that his testimony in so far as it related to the first entry into the building was insufficient to show more than the fact that a crime was committed, and did not tend to connect the defendant therewith.

█ The crime of burglary was complete upon the first entrance into the building with intent to remove the safe (Pen. Code, sec. 459; *People* v. *Sharp*, 58 Cal. App. 637 [209 Pac. 266]). █ Admittedly Barelona did not participate in the first entry nor was he connected with the parties to that offense before the same was committed. Under section 32 of the Penal Code he was an accessory thereto; but, as held in *People* v. *Collum*, 122 Cal. 186 [54 Pac. 589], under the laws of this state an accessory is not an accomplice, nor was he such within the following definition found in section 1111 of the Penal Code, namely, ''An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the course of which his testimony is given.'' The statements testified to by the witness Barelona were made in the presence of the defendant by one of

his companions, and in effect charged him with having participated in the original burglary. ■ The statements of third persons are not admissible in evidence simply because they were made in the presence and hearing of the accused; but if it is proved that he failed to deny an accusation under circumstances which may be construed as an admission of its truth, or that he failed to act as it might reasonably be expected that an innocent person would act, evidence of the statement is admissible in connection with evidence of his conduct in the face of the accusation (*People* v. *Lew Fat,* 189 Cal. 242 [207 Pac. 881]; *People* v. *Matthew,* 194 Cal. 273 [228 Pac. 424]; *People* v. *Bradley,* 23 Cal. App. 44 [136 Pac. 955]; *People* v. *Porter,* 64 Cal. App. 4 [220 Pac. 20]). As the court said in *People* v. *Yeager,* 194 Cal. 452, 486 [229 Pac. 40, 54]: ''Such evidence is not admissible for the purpose of proving the truth of the accusatory statements but rather as indicating a consciousness of guilt on the part of the accused by allowing an imputation opposed to the presumption of innocence to pass unchallenged. It is for the court to determine in the first instance whether the import of the statements is such that it would furnish a foundation for proof of conduct; and it is for the jury to decide whether the accused was aware of the statements made; whether under all of the circumstances shown they call for a disclaimer; whether the accused did reply to them, and whether, if he did not do so, such failure showed criminal intent or consciousness of guilt. If these propositions of fact are resolved in favor of the prosecution the item of conduct should be given the effect to which upon the entire case it is entitled.'' And as held in the following case, an implied admission of guilt may have as much weight as one made in express terms, the evidentiary value in any case being a matter for the jury to determine. (*People* v. *Shelest,* 64 Cal. App. 213 [216 Pac. 389].) ■ The inference of guilt reasonably to be drawn by the jury from the conduct of the defendant in the face of the statements made in his presence, together with the fact that he transported his associates to the place where it was evident from the conditions described by Barelona a previous entry into the building had been made, and his conduct upon their arrival there, tended strongly to show his connection with the origi-

nal burglary, and were sufficient to corroborate the testimony of Lauricelli, his accomplice.

The defendant sought to impeach the testimony of the witness Lauricelli by evidence of statements made by the latter tending to show a motive for testifying falsely. No foundation was laid for the attempted impeachment and the testimony was properly rejected.

After the jury retired for deliberation they reported that they were unable to agree, and, according to the bailiff, requested further instructions. When brought into court their foreman announced that they had been unable to agree and that they stood eleven to one for conviction. The latter portion of the statement was not made in response to any question asked by the court. The court thereupon instructed the jury, the material portion of its instructions being as follows: "There was not any intimation whatever as to how you stood. I indicated to you that I did not think you had been out long enough. There is one instruction that I should perhaps have given you, but I looked into your faces and perhaps concluded that it was not necessary. And that was that while it was your duty, the duty of each one of you, to have your individual opinion in a case upon reason, upon the law, don't be arbitrary. You cannot be arbitrary. Eleven cannot be arbitrary: one cannot be arbitrary. You should be tolerant. You should listen to the arguments of your fellow jurors. You should listen to the statement of the facts of the case as produced here on the witness-stand, and after a full consideration of all of the facts and upon the reasoning of your fellow jurors, if any one of you should be convinced—it makes no difference whether for conviction or against conviction—if you should be convinced you are wrong, then it is your duty upon your oaths to change your vote and vote in accordance with your conviction in the case, honest conviction. You cannot decide a criminal case upon sympathy or upon some suspicion or upon something that you see in the case that you do not like exactly, provided you are convinced from the evidence itself, from the legal phases of the case, that your opinion in the case is well founded and your conclusion is right, right from the legal standpoint, from what the court has told you about the law. And it is your duty to decide

it from the evidence, and do not decide it upon prejudice or upon sympathy or upon anything outside of the evidence itself. You are bound under your oath to take the evidence as it is produced to you, and the law as given you by the judge, and reach your conclusion, reach a legal conclusion. That is the administration of law. Anything short of it is not. . . . ''

The defendant, in view of the statement made by the foreman of the jury, assigns these remarks and instructions of the court as being prejudicially erroneous.

We find nothing therein which indicated that the trial court viewed the evidence as pointing to the defendant's guilt, nor does the language used indicate coercion. The facts were closely analogous to those in *People* v. *Miles*, 143 Cal. 636 [77 Pac. 666], and *People* v. *Rhodes*, 17 Cal. App. 789 [121 Pac. 935], and we are satisfied that the defendant suffered no prejudice.

After an examination of the entire record, including the evidence, we are convinced that the verdict is fully supported and that there are no grounds for reversal.

The judgment is affirmed.

Tyler, P. J., and Parker, J., *pro tem.*, concurred.