[Crim. No. 2586. First Dist., Div. One. Sept. 30, 1949.]

THE PEOPLE, Respondent, v. FRANK STANTON WALKER, Appellant.

Ray G. Callaghan, Dante H. Giannini, Peter Anello and Edward J. Niland for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant was convicted by a jury of eight felonies—four counts of kidnaping (Pen. Code, § 207), and four counts of rape by force and violence (Pen. Code, § 261). After judgment he moved for a new trial. From the judgment and the order denying the motion for new trial, he has appealed.

## CONTENTIONS

Defendant does not attack the sufficiency of the evidence to support the convictions, other than to claim that the proof of identification is not strong. His contentions are: (1) the remarks of the court to the jury were prejudicial; (2) the district attorney prejudicially misstated evidence in his arguments to the jury; and (3) the court abused its discretion in denying the motion for a new trial. Inasmuch as we have concluded that the first contention is sound, and that the case will have to be retried, it becomes unnecessary to consider the other two contentions.

## FACTS

A general statement of the facts is sufficient for the purposes of the opinion. Each of the four prosecuting witnesses was seized and raped in Santa Clara County under circumstances which indicated that the same man committed each offense. The *modus operandi* was very much the same in each case. The victim, after alighting from a bus on a lonely corner, was accosted by a man who got out of the left side of his car, leaving the door open, the lights on, and the motor running. The man usually asked some question and then seized the victim, pulling her into the car, making her get in the front seat from the left side. The victim then was forced to kneel on the floor of the car with her head resting on the seat, while the man drove for some 5 or 10 minutes. During this time the victim usually was told to remove her clothing or the assailant started ripping it off. A knife was used to intimidate the victim. The victim was usually taken from the car for the act of intercourse, during which her face was covered, often with an article of her own clothing. Following the attack,

the victim was returned to the spot where she had been picked up, and there released. The assailant's car was a dark-colored 1936 Ford sedan with a broken handle on the right front door. The assailant took great precaution to prevent any of his victims seeing his face, flashing his flashlight in their eyes, covering their faces with an article of their own clothing, threatening with a knife to kill them if they looked at his face or screamed. There were other similarities in the mode of attack. The question of identification of the defendant was the main issue in the case. The victims, with the exception of one who said she saw his face, had little, if any, opportunity to see it. Defendant denied the charges and offered evidence to show that the condition of his car was different than that described by at least one of the witnesses. There was also his testimony, and that of his girl friend, his sister, and his mother, which if believed would have proved an alibi for the time of the commission of the last offense. While the identification of defendant and his car by the victims was sufficient, it was by no means overwhelming. Taking the evidence as a whole, it shows that the case was a close one on the question of the identification of defendant.

### REMARKS OF THE COURT

 The jury retired for deliberation at 11 a. m. At 3:20 p. m. the record shows that the jury returned for instructions. They requested and were read the testimony of one of the victims and of two police officers. They retired again at 3:40, and later, at the request of the court, were returned to the courtroom. The following then transpired: "THE COURT: (Addressing the jury.) You haven't reached a verdict, Ladies and Gentlemen of the Jury? THE FOREMAN: We haven't your Honor; we are unable to agree. THE COURT: I would like to ask you a question or two. I don't want to know how you stand, but I would like to ask you one way or another how nearly you were in agreement. In other words, I don't want you to tell me you are mostly for one side or the other—but numerically,—do you stand eight to four; five or seven, or what? THE FOREMAN: A. The vote is ten to two for conviction. Q. I don't want any statement about conviction; did you say eight to four? A. Ten to two. Q. And how recently has that vote changed? A. It hasn't changed; it has been the vote all along. Q. You mean they started 'ten-to-two' and are still 'ten-to-two'? A. That's right, your Honor. Q. Do you think there is any possibility of reaching a con-

clusion if you stay out a little longer? A. I do not, your Honor.'' The judge then interrogated each juror as to whether in his opinion there was any chance of an agreement. Ten jurors, including the foreman, said that in their opinion there was no such chance. One juror answered, ''I think there is.'' Another juror first answered, ''I really wouldn't know; I couldn't tell.'' After repeating that she didn't know, she said, ''There is a possible chance.'' The court then said: ''I always endeavor to make things as easy as I can for everyone I come in contact with, and sitting here on the bench I am particularly desirous of not putting jurors to any more inconvenience than I can help. At the same time, I have a heavy sense of my responsibility to the taxpayers, and to the public of the County, and a trial like this is an expensive thing, and a hung jury means it all has to be gone over again before another jury, and that means double expense to the County,—to the taxpayers. If there is not any chance of your agreeing, of course, I haven't anything else to do,— it would be foolish for me to keep you and lock you up, which I would not do, of course. (Addressing counsel.) Have counsel any suggestions at all? MR. CALLAGHAN [for the defense]: Only that if this jury can't agree, your Honor, under the circumstances they are through. THE COURT: If you think there is a chance—— MR. CALLAGHAN: Ten of them say there is not, and two say there is. I would say the jury is the best judge. MR. MENARD [for the prosecution]: Of course, your Honor knows how we feel about these things. If there is any chance at all of obtaining a verdict we would like to see it done. The thought went through my mind that perhaps another little while in the jury room wouldn't be any great inconvenience to anyone. THE COURT: Now, ladies and gentlemen, I will tell you what I think. It is twenty minutes after 5, and I am going to let you go back to the jury room and take half an hour and see if you can't reach an agreement. Talk it over fairly; I don't want anybody to do violence to his own judgment, *but at the same time there are twelve of you,—and ten one way and two the other—that is coming pretty close to an agreement.* Talk it over among yourselves, and then when six o'clock comes maybe I will call you in and see what the result is. All right, you will retire again.'' (Emphasis added.)

██ There are a number of California decisions on the question of possible prejudice from instructions to the jury

urging agreement on a verdict. Certain principles seem well established: 1. It is proper for the court to remind the jury that the principal purpose of the trial is to reach some verdict, and that they should not give up without making all possible efforts to do so. (*People* v. *Rhodes,* 17 Cal.App. 789 [121 P. 935]; *People* v. *d'A Philippo,* 220 Cal. 620 [32 P.2d 962]) 2. It has been held proper for the court to remind the jury that a new trial will be an expense to all taxpayers (*People* v. *Miles,* 143 Cal. 636 [77 P. 666]; *People* v. *Swanson,* 120 Cal.App. 173 [7 P.2d 380]), although such statements have been characterized as "hazardous." (*People* v. *Miles, supra.*) 3. The judge may ask the numerical division of the jury (*People* v. *Lee,* 34 Cal.App. 702 [168 P. 694]), but cannot ask which number is for conviction. (*People* v. *Talkington,* 8 Cal.App.2d 75 [47 P. 2d 368].)

Upon the question of just how far a court may go in urging a jury to agree and how prejudicial a judge's remarks on that subject may be, there seems to be some inconsistency in the decisions. However, the difference in the effect of the judge's remarks seems to be based upon the closeness of the particular case and the question of whether the remarks were likely to have influenced the jury in the type of verdict it rendered.

In *People* v. *Carder,* 31 Cal.App. 355 [160 P. 686], after having once returned to have certain evidence read to them, the jury again returned and informed the court that they were unable to agree. The judge, after telling them that they must come to a verdict, if they possibly could, stated (p. 356): "You oughtn't to make up your mind you are not going to agree on this kind of a case, simply calls for the sensible reasoning of men according to the evidence and talk it over together." Furthermore, in reply to a juror's question, the court said: 'I don't want to decide any question of fact for you; *that question though it seems very plain to me.*" The next morning the judge was again informed that the jury could not agree. After finding out that there were two "contrary" jurors (which way did not appear), and after, in effect, telling them that he would keep them out all that day and the next, which was Sunday, the judge stated (p. 356): "Questions of fact you must decide; *there oughtn't to be any trouble. It's a case you ought to decide, ought to agree upon and don't make up your minds that you can't agree, don't get contrary but just in a good humor, good-natured way work it out.* Juryman Cleland: Your Honor,

we worked all night in there and we have talked all night. I think we have got it down to where they say we have made up our minds and no use to argue.'' The judge, after again urging them to try to agree, sent them back to the jury room. The appellate court reversed the conviction on the ground that the language used constituted coercion or persuasive influence on the part of the judge towards a verdict of conviction. It stated that it was obvious that the ''contrary'' jurors were for acquittal. In *People* v. *Kindleberger,* 100 Cal. 367 [34 P. 852], the jury, after being out all night, were brought into court. A juror informed the court that the jury could not agree. The court then said, among other things (p. 368): ''. . . in view of the testimony in this case, the court is utterly at a loss to know why twelve honest men cannot agree in this case.'' He repeated this remark, and sent the jury out. The court set aside the conviction because of the remarks of the judge, particularly the one above quoted.

In *People* v. *Bruno,* 49 Cal.App. 372 [193 P. 511], the judge stated to the jury on their return to the courtroom for further instructions, ''The court does not want to try this case again. It feels that it is unnecessary to do so.'' (Emphasis omitted.) The court said that although the use of such language was ''hazardous'' it did not suggest how the verdict should go, and hence the defendant was not prejudiced.

In the three cases last mentioned the judge was not informed as to which way the jury stood. In the following cases he was so informed. *People* v. *Blackwell,* 81 Cal.App. 417 [253 P. 964], discloses a situation where the jury, after being out approximately three hours, returned to the courtroom. The foreman stated that after taking three ballots ''with the result nine for conviction and three for acquittal,'' the jury felt that there was no chance of agreement. Thereupon a discussion ensued between the judge and the foreman as to the cause of the disagreement. The judge then sent them back to the jury room, saying (p. 421): ''. . . You have heard the evidence here and you all understand all of the evidence. I think the jury ought to agree on a verdict. I think you better retire and deliberate further.'' Concerning these remarks the court said (p. 421): ''Under all the circumstances, there is merit in appellant's contention that the statement of the court, 'I think the jury ought to agree on a verdict,' amounted to 'a plain intimation that the court thought the evidence in the case warranted a verdict of guilty

and that the jury should so find.' The foreman had just announced that the jury stood nine to three for conviction and that some of the jurors 'refused to believe certain witnesses.' The defendant was the only witness for the defense who gave testimony in denial of his participation in the alleged offense. Three witnesses for the prosecution testified to the defendant's connection with the offense. From the foreman's statement that 'some members of the jury refuse to believe certain witnesses', the natural inference is that the three jurors voting for acquittal refused to believe the witnesses for the prosecution rather than that the nine others refused to believe the defendant's testimony. As was said in *People* v. *Kindleberger,* 100 Cal. 367, 369 [34 P. 852], 'We think the jury understood, or at least may have understood, from these unguarded remarks that in the opinion of the judge the defendant was guilty.' And as said in *People* v. *Conboy,* 15 Cal.App. 97, 98 [113 P. 703], 'These remarks amounted to a plain intimation that the court thought the evidence in the case warranted a verdict of guilty, and that the jury should so find.' '' The court also pointed out that ''The evidence of the defendant's guilt is not of such character as to enable this court to say that the error of the trial court was not prejudicial.''

In *People* v. *Piscitella,* 90 Cal.App. 528, 533 [266 P. 349], ''After the jury retired for deliberation they reported that they were unable to agree, and, according to the bailiff, requested further instructions. When brought into court their foreman announced that they had been unable to agree and that they stood eleven to one for conviction. The latter portion of the statement was not made in response to any question asked by the court.'' The judge then instructed them that he did not think they had been out long enough and that possibly he should have given them an instruction concerning their duty not to be arbitrary, to discuss the testimony, but to change their votes only in accordance with their convictions. The court held that these remarks were not prejudicially erroneous. ''We find nothing therein which indicated that the trial court viewed the evidence as pointing to the defendant's guilt, nor does the language used indicate coercion.'' (P. 534.)

In *People* v. *Miles, supra* (143 Cal. 636), the jury came into court for further instructions. On their second return they announced that they had agreed upon a verdict as to one defendant but not as to the other. On their third return

they informed the court that they could not agree upon a verdict as to either defendant. They were sent back to the jury room, and on their fourth return the foreman stated that they could not agree. However, four of the jurors indicated a chance for agreement. The court then referred to the fact that retrials were expensive matters and urged them as taxpayers to save the county the expense of a new trial, if there was any possibility of their agreeing on a verdict. The Supreme Court held that the judge's statements were not prejudicial. "No intimation whatever was given as to how the court regarded the evidence; its whole purpose was to require a reasonable effort on the part of the jury to come to some conclusion one way or another, and not cause a mistrial." (P. 638.)

While most of the cases upon the subject were before the enactment of section 4½ of article VI of the Constitution, the rule would appear to be the same now as then, namely, that if, under the circumstances of the particular case, the remarks of the judge, who knew how the jury stood, were such as to bring to bear in some serious degree, although not measurable, an improper influence upon the jury, or to indicate to the jury that a particular result should be reached, such remarks constitute prejudicial error.

With the foregoing rules in mind, it is clear from a reading of the judge's remarks in our case that the two jurors voting for acquittal (and who apparently had consistently so voted from the beginning), well could have believed that the judge felt they should agree with the majority. Undoubtedly, the judge did not intend to influence the jury as to the type of verdict to be rendered, but we must realistically consider the effect of the language used. There was no impropriety in his asking how the jury stood numerically, but the moment he gained the information concerning which way they stood, it was his duty to be more than careful in his remarks thereafter, so that the jury would clearly understand that he was not urging, or even suggesting a verdict one way or the other. Instead he said, "there are twelve of you,—and ten one way and two the other,—that is coming pretty close to an agreement." It was close to an agreement *only* if the two for acquittal would change their view and join the majority. As said in *People* v. *Kindleberger, supra* (100 Cal. 367, 369), "[T]he remarks of the judge in this case could not fail to create the impression that he thought the jury ought to convict upon the evidence before them."

In view of the character of the judge's remarks, it was not necessary in order to urge the error on appeal for defendant to request an instruction that the jury disregard the judge's remarks. (*Berguin* v. *Pacific Elec. Ry. Co.*, 203 Cal. 116 [263 P. 220].)

The judgment and the order denying the motion for new trial are reversed.

Peters, P. J., and Ward J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 27, 1949.