THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. VÍCTOR MARTÍNEZ RAMOS, Defendant and Appellant.

No. 15665. Argued December 3, 1954.—Decided June 29, 1956.

Guillermo Bauzá for appellant. José Trías Monge, Attorney General, and Jaime García Blanco, Special Fiscal of the Supreme Court, for appellee.

### JUDGMENT

San Juan, Puerto Rico, June 29, 1956.

In view of our decision in the case of People v. Rivera, 77 P.R.R. 628, the judgment which was rendered on June 27, 1952, in the above-entitled case by the San Juan Part of the Superior Court of Puerto Rico, is hereby affirmed.

It was so decreed and ordered by the Court as witness the signature of the Chief Justice. Mr. Justice Negrón Fernández and Mr. Justice Belaval dissented.

A. C. SNYDER
Chief Justice

I certify:
IGNACIO RIVERA
Secretary.

---

MR. JUSTICE BELAVAL, with whom MR. JUSTICE NEGRÓN FERNÁNDEZ joins, dissenting.

An information was filed against Víctor Martínez Ramos for the offense of burglary in the first degree. The jury

which sat in the case deliberated for some time and then requested to be brought into the courtroom for a reading by the court stenographer of "the testimony of the elderly lady and the injured party" (Tr. 47), both of whom were witnesses for the prosecution. Since the stenographer who took down their testimony was not in the courtroom, the judge repeated to the jury the customary summary of the testimony which had been included in his instructions, stating further that if they wished to hear the entire testimony the stenographer would be available the next day. Apparently, the jury was satisfied with the summary of the testimony made for the second time by the presiding judge, since they retired to deliberate.

The jury again requested to appear before the judge and, when asked if they had agreed upon a verdict, the foreman answered: "No, Your Honor, I believe we could never agree upon a verdict even if we remained all night." In view of this statement, the presiding judge made the following statements:

"The marshal will then please take the jury to the hotel for dinner and see that beds are ready for them so they can rest. *The court believes this is a clear case and that a verdict can be agreed upon.* The judge is under the impression that after a night's rest they will be able tomorrow morning to decide this case. The marshal will take the jury to the hotel where they can sleep tonight. The gentlemen of the jury are cautioned that they cannot separate and that they must keep together; that they cannot make comments among themselves or with any person, nor shall they permit any person to approach and talk to them about the case, or about anything connected with the case, until tomorrow morning when deliberation will be resumed. Recess. '

"Mr. Soto: Your Honor, suppose we reach an agreement?

"The Court: It's 30 minutes to six. Don't the gentlemen of the jury believe that if you make an effort, that if you make a further attempt to deliberate, you will be able to reach an agreement? Could you still reach a verdict before six?

"Mr. Pío Mejías: I think not, Your Honor.

"The Court: The Court believes that if you would take more time, it might be possible to reach a verdict, whatever it may be; the court believes and understands that you should go back to deliberate for half an hour more to see if it is possible that a verdict can be reached. You may go upstairs."

Before the time allowed for further deliberation had elapsed, the jury returned to the courtroom with a verdict of guilty. The following incident then took place:

"The Court: Have the gentlemen of the jury agreed upon a verdict?

"Foreman Soto: Yes, sir.

"The Court: Please hand it to me.

"Mr. Soto: Yes, sir.

"The Court: The defendant will please stand up. The Clerk will please read it.

"The Clerk: Criminal case F-3425, *The People of Puerto Rico* v. *Víctor Martínez Ramos,* burglary in the first degree. We, the gentlemen of the jury, find defendant Víctor Martínez Ramos guilty of the offense of burglary in the first degree. San Juan, Puerto Rico, June 17, 1952. Antonio Soto, Foreman of the Jury.

"The Court: Can the Foreman report . . .?

"Mr. Soto: By a majority.

"The Court: Of what?

"Mr. Soto: Of ten to two.

"The Court: To each and everyone of the gentlemen of the jury, is this your verdict by a majority of ten to two?

"Gentlemen of the jury: All answer in the affirmative.

"The Court: Ten against and two in favor?

"Gentlemen of the Jury: Yes, sir.

"The Court: Since all the gentlemen of the jury answer that that is their verdict, the court declares defendant Víctor Martínez Ramos guilty of burglary in the first degree.

"Foreman Soto: We recommend clemency for the defendant.

"The Court: The court will take into consideration the recommendation of the gentlemen of the jury.

"Juror Fermín Viera: I wish Your Honor would excuse me as juror.

"The Court: We'll leave that question for tomorrow.

"Mr. Viera: I don't feel like serving . . .

"The Court: You are now excused until tomorrow at nine. When you return tomorrow, if there is some reason why you should be excused . . .

"Mr. Viera: I feel uneasy, Your Honor.

"The Court sets the 20th day of this month to pronounce sentence. The marshal will please take charge of the defendant. Recess until tomorrow morning at nine."

Before sentence was pronounced, the defendant filed a motion for a new trial, alleging that, from the jury's conduct, it was evident that the decision of the case had not been given "fair and due consideration." (Subd. 3 of § 303 of the Code of Criminal Procedure of Puerto Rico.) The motion was accompanied by the following affidavit made by Fermín Pereira, a juror in the case:

"I, Fermín Pereira, of legal age, married, and a resident at 1114 Vallejo Street, Río Piedras, Puerto Rico, hereby depose and state under oath: *First:* That my name and personal circumstances are as aforesaid. *Second:* That I was a member of the jury panel which sat in the case of *The People of Puerto Rico* v. *Víctor Martínez Ramos;* that the trial opened on Monday, June 16, and ended on Tuesday, June 17, 1952, before Judge Joaquín Correa Suárez, at which Ernesto Mieres Calimano acted as prosecuting attorney and Lic. Guillermo Bauzá as defender.—*Third:* After hearing the evidence of both parties, we retired to deliberate in the afternoon of June 17, 1952. When the initial vote was taken at the commencement of the deliberations and Mr. Soto, the foreman of the jury, *asked those of us who believed the defendant was not guilty to rise, five of us stood up.* The deliberations continued and, since the five jurors who stood up insisted on the defendant's innocence, we went downstairs to report to the Judge, which we did through the foreman of the jury, that we could not reach an agreement and that there would be no verdict. *The Judge stated that the evidence was clear and that we could reach a verdict.* We went back for the second time to the deliberating room and the five of us who believed in defendant's innocence insisted on a verdict of acquittal. We went downstairs again to report to the Court that it was impossible to reach a verdict, and again the judge, at our request, summarized

the testimony of Martín Skerret and of the second witness for the prosecution, Natividad Maldonado. We went back to the deliberating room and the same five jurors insisted on the defendant's innocence and that there was doubt in favor of the defendant. When we told the judge again that it was impossible to bring in a verdict, he suggested that we still remain half an hour until six o'clock to resume deliberations, and that if a verdict was not reached by six o'clock we would have to eat and sleep at the hotel, so that the next day at nine o'clock we would resume deliberations. *When we went upstairs again to deliberate, one of the jurors who was in favor of defendant's innocence stated that he had to meet his son who was returning from Korea that afternoon, and that he could not remain there until the next day.* The vote then taken was ten for conviction and two for acquittal. Of these two, my vote was one of them.—*Fourth:* During the deliberations last above mentioned *one of the jurors said that he felt ashamed to go again to the courtroom without a verdict,* to which I replied that I was not ashamed at all and that I insisted on my conviction because I was acting in accordance with my conscience; that there was some doubt and that doubt was in favor of the defendant.—*Another juror said that we should return a verdict because the judge and the prosecuting attorney were going to get angry,* to which I retorted that prosecuting attorney Ernesto Mieres Calimano was very well known and a friend of mine, that I held him in high esteem as to his honesty and ability as a prosecutor, but that even so I would not change my opinion as a juror believing that there were some doubts in the statements made by the aggrieved party and by the principal witness in favor of the defendant; that I had the honor of knowing the judge and that I had a high opinion of him and of his ability, and that I was not going to give a verdict against my conscience simply because he might get angry. As a result of this statement made by one of the jurors who insisted on the defendant's guilt and the manner in which the deliberations were conducted when the verdict of guilty was returned, I stood up and, addressing myself to the Judge, asked to be excused because I was feeling ill and also uneasy to continue acting in that jury.—This being the truth, I swear this statement this 21st day of June 1952, in San Juan, Puerto Rico.—(S) Fermín Pereira.—Affidavit No. 9979.—Subscribed and sworn to before me by Fermín

Pereira, of legal age, married, and a resident of Río Piedras, who is personally known to me, to which I certify, in San Juan, Puerto Rico, this 21st day of June 1952.—(S) Carlos D. Vázquez, Notary Public."

At the hearing of the motion for a new trial, the defendant presented the testimony of juror Fermín Viera or Pereira, who ratified all the statements made by him in the preceding affidavit, referring specifically to the gentlemen: Pío Mejías, the juror who had said "that he felt ashamed to go again to the courtroom without a verdict"; Felipe García, the juror who said that "he had to meet his son who was returning from Korea that afternoon, and that he could not remain there until the next day"; the foreman of the jury, Antonio Soto, who said that they had to bring a verdict "because the judge and the prosecuting attorney were going to get angry." In the incident of the new trial, Fermín Pereira testified that when they went back for the third time they did not deliberate further (Tr. 9–10), but simply changed the vote from 5–7 to 2–10.

Antonio Soto, foreman of the jury, testified for the prosecution stating, in connection with the statement allegedly made by him "to the effect that they had to bring in a verdict because the judge and the prosecuting attorney were going to get angry," that what someone said was "that the defense and the prosecuting attorney would feel very happy over any verdict" (Tr. 15). There also testified Felipe García, who stated, in connection with the statement allegedly made by him, "that he had to meet his son who was returning from Korea that afternoon, and that he could not remain there until the next day"; that what he said was, "that I, for one, am in a hurry because some veterans are returning from Korea at six or at ten o'clock in the morning" (Tr. 17). The last one to testify was Pío Mejías who stated, in connection with the statement allegedly made by him, "that he felt ashamed to return to the courtroom without a verdict"; that what he said was, "that I see no reason

why we could not come to an agreement, and that since we had returned several times I felt ashamed" (Tr. 19).

It will be seen that the evidence for the prosecution tends to smooth out rather than to contradict Fermín Pereira's statements. But his testimony is substantially ratified.

The trial court denied the motion for a new trial. On appeal to this Court, appellant complains that the statements made by the presiding judge that "the court believes this is a clear case and that a verdict can be agreed upon," and "the court believes that if you would take more time, it might be possible to reach a verdict," were a sort of psychological coercion on the conscience of the jurors who were remiss in bringing a verdict of guilty, which impaired his right to a fair and impartial trial.

Generally speaking, no prejudicial error is committed when the judge informs the jury that the evidence is clear and that there ought not to be difficulty in reaching a verdict: *People* v. *Rivera*, 77 P.R.R. 628, 633 (Pérez Pimentel, 1954). On the other hand, the length of time a jury should be kept deliberating in a criminal case is a discretionary matter with the judge. In this connection, § 277 of the Code of Criminal Procedure of Puerto Rico provides that the period of deliberation shall be such as will enable the judge to conclude "that there is no reasonable probability that the jury can agree." His action in keeping them confined a reasonable time, refusing to discharge them at their request, or in sending them back for further deliberation after they have announced that they cannot agree, is not, standing alone, prejudicial error. 85 A. L. R. 1421.

The rule is that the verdict should be exclusively the expression of the concurrence of individual judgments rather than the product of mixed thoughts of the jury and of the presiding judge. The presumption is that the judge, who is the officer who submits the essential facts of the case to the jury and instructs them on the law applicable to the case, is in a privileged position as against laymen, and any

intimation on the merits of the case may easily prove controlling over the opinion of the jurors on the facts of the case. *United States* v. *Link,* 202 F. 2d 592, 595 (Kalodner, 1953); *People* v. *Bartolomei,* 70 P.R.R. 664, 671 (Negrón Fernández, 1949).

The rule of good practice is that the courts ought not to make comments in the course of the trial on the merits of a case. 3 Am. Jur. 606, § 1055, second paragraph. The rule seems to be the same after the case is submitted to the jury. *People* v. *Green,* 224 P. 2d 406, 407 (Cal.) (McComb, 1950); *People* v. *Walker* (Cal.), 209 P. 2d 834, 837 (Bray, 1949); *United States* v. *Samuel Dunkel & Co.,* 173 F. 2d 506, 509 (2d Cir.) (Clark, 1949). Even a particular intonation or significant gesture in commenting upon the evidence, which might convey to the jury the opinion of the presiding judge on the facts of the case, should be avoided. *Billeci* v. *United States,* 184 F. 2d 394, 401 (Colum. Cir.) (Prettyman, 1950).

If we were to decide this case upon the incidents which took place when the presiding judge ordered the jury to deliberate further, we would dismiss the appeal taken from the order refusing a new trial. *People* v. *Rivera, supra.*

But this is an unusual case. I believe it is one of the few cases which might, perhaps, exist in the jurisprudence, in which the evidence introduced at the hearing for a new trial shows the extent of the psychological impact on the minds of the jury of the order to deliberate further until a specified hour, as well as by the harmless statement of the judge that the case was a clear one and that it was possible to reach a verdict. Generally, the case law has been established taking exclusively as basis the statements of the presiding judge, as they appear in the transcript of record, and it is on the basis of those statements that the coercive effect on the jury is predicated. Since the jury is not permitted to challenge its own conclusions of the verdict,

the kind of evidence which the trial court had under consideration at the hearing for a new trial is in fact unusual. Despite our earnest effort to find a cognate case, we have been unable to find any. This being so, we cannot but treat it as unique in its kind, and not, therefore, governed by the general principles which apply to this juridical situation.

The evidence at the hearing for a new trial showed that the jury was divided five to seven when they requested to be discharged; that they requested that two testimonies be read to them which, by the way, are the only two testimonies likely to be incriminating; that when they went back to deliberate they could not come to an agreement and requested to be discharged; that when they went back to deliberate after listening to the statements of the judge, they proceeded, without further deliberation on the merits of the case, to return a verdict of guilty, while the jurors who were doubtful made statements such as these: "that they felt ashamed to go again to the courtroom without a verdict"; "that he had to meet a son who was returning that afternoon from Korea and could not remain until the next day"; that *"the judge and the prosecuting attorney were going to get angry."*

But there is more. We have examined the two testimonies which the jury requested be read by the court stenographer, which, by the way, are the only two testimonies likely to be incriminating, and they are so unsatisfactory for conviction beyond a reasonable doubt that we are convinced that this is a case in which the slightest intimation on the sufficiency of the evidence must have been prejudicial to the defendant.

The order refusing a new trial should be set aside and a new trial granted instead.