[Crim. No. 5147.   Second Dist., Div. Three.   Aug. 11, 1954.]

THE PEOPLE, Respondent, v. MONTE HAAG, Appellant.

Caryl Warner, Don Holt, Jr., and Forrest N. Fugate for Appellant.

Edmund G. Brown, Attorney General, and Martin M. Ostrow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted, in a trial by jury, of assault with a deadly weapon. He appeals from the judgment, sentence, and order denying his motion for a new trial.

Appellant contends that the court erred in instructing the jury, and in rulings as to admissibility of evidence.

Defendant operated a motel in Los Angeles. On February 4, 1953, Mr. Moles rented a double unit of the motel for himself, his wife, their four children, and his mother, at a rental of $7.00 a day. A part of the motel, known as the annex, was a house next door to the motel. After Mr. Moles had occupied the double unit for three days, he rented the downstairs part of the annex for $42 a week, and then he and his family moved to that place.

On March 25 (Wednesday), when Mr. Moles owed defendant about $100 for rent, Mr. Moles went to the motel office and paid $30 to defendant. Defendant said that he would have to have more money, that Mr. Moles would have to pay $10 a day on the rent or he would have to move. Mr. Moles "agreed to his arrangements." A day or two later Mr. Moles, who was a Bible salesman, sold a Bible to defendant for $30 and defendant gave him credit of $30 on the rent. On Thursday (or Wednesday) Mr. Moles told defendant that he (Moles) would have to skip Thursday and he would start $10 a day on Friday. On Friday he paid $10 to defendant.

On March 28 (Saturday) about 9:30 a. m., while the Moles family was away from home, defendant removed all the personal belongings of the family from the annex and took them to the motel office. When Mrs. Moles, the children, and the mother of Mr. Moles returned to the annex the door was locked. Then she talked to defendant, who told her that he had removed their things to the office. She asked for her mail, and upon receiving it from him she opened a letter in which there was a $10 bill. She offered the $10 to him and asked if he would let them in the annex. He refused to take the money, refused to let them in the annex, and said that he had a chance to rent the place for $45 a week. She asked him to return the baby's cot and the clothes. He refused her request.

Mr. Moles returned home about 7:30 p. m. and found that the door was locked. He had a conversation with one of his children, and then he went to the door of the motel office and knocked on the door. Mr. Moles testified that defendant opened the door and he stepped into the office; he asked defendant what had happened, and said he was living up to the agreement and was paying defendant $10 a day; then defendant shot him in the left thigh with a gun; he (Mr. Moles) grabbed for the gun and while he was wrestling with defendant "over the gun" the gun "went off" two or three times; after he took the gun away from defendant, defendant ran out the door and around the corner of the building; he (Mr. Moles) went to the corner of the building and defendant was gone; then he called the police. The gun was a .22 caliber automatic.

Defendant testified that he heard a pounding on the door of the office; he opened the door and Mr. Moles stepped in

and said, "What the hell is the idea of this deal this after-noon"; defendant was backing up all the time and Mr. Moles was coming forward, "with eyes staring," face red, and fists clenched; defendant was afraid of him; defendant's gun was on a shelf near a screen that separated the office from defendant's living quarters; when defendant had backed to a place near the screen and when Mr. Moles was about 1½ feet from him, defendant reached for the gun with his left hand, and as he was trying to change it to his right hand Mr. Moles grabbed defendant's wrist, the gun went off, and they struggled about two or three seconds and the gun went off again; then defendant released the gun and ran out the door; when defendant was about "half-way down" the motel property he saw Mr. Moles standing at the office door, and he saw a flash of the gun and heard the report; then defendant ran around the corner and across the street to a gas station. On cross-examination, defendant testified that Mr. Moles did not push his way into the office; he did not strike defendant, nor lift a hand to strike him, nor have anything in his hand. Mr. Moles denied that he shot at defendant.

A police officer testified that defendant told him that he answered a knock on the door, and Mr. Moles entered; defendant was afraid that Mr. Moles would assault him, so he fired the gun. Another officer testified that defendant told him that Mr. Moles knocked on the door and defendant opened the door; defendant was afraid that Mr. Moles was going to beat him up, and he picked up a gun and shot him.

Appellant contends that the court erred in refusing to give his requested instructions (1) regarding the legality of evicting Moles; (2) regarding appellant's lien for unpaid rent on Moles' personal belongings; (3) regarding appellant's defense that he was defending property on which he had a lien for unpaid rent. He argues that one of his defenses was that he had a right to evict Moles and hold his personal belongings; that he had such right under section 1861a of the Civil Code; and that the trial was "punctuated by references" to unpaid rent and whether appellant acted lawfully in taking and holding the personal belongings. He also argues that he was defending the property on which he had a lien. ■ He requested an instruction, known as No. 8, which was as follows: "The jury is instructed that Section 50, of the California Civil Code provides as follows: '§ 50 [Right to use force.] Any necessary force may be used to protect from wrongful injury the person or property of

oneself, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, master or guest.' In this regard, the jury is further instructed that the defendant had a law conferred right to use reasonable force to protect himself from wrongful injury or attack, and in determining whether the defendant acted reasonably, the jury should take into consideration the circumstances surrounding the incident.'' The first part of this instruction, wherein section 50 of the Civil Code is quoted, pertains to defense of person and property. The remainder of the instruction, wherein said section is applied to the present case, pertains only to defense of person. Insofar as the instruction pertains to self-defense it is covered by instructions which were given, as shown by instructions quoted in the footnotes herein. Insofar as the instruction pertains to defense of property, it is not applicable under the evidence herein. There was no evidence that Moles was making any effort to retake his property; nor was there any evidence that appellant was defending against any purported effort of Moles to retake the property. Moles and appellant both testified to the effect that Moles, upon entering the office, made an inquiry as to what had happened. Nothing was said about property while Moles was in the office. Appellant's testimony was to the effect that he was defending himself. Appellant testified that he was afraid of Moles—that Moles was coming forward with ''fists clenched.'' There was no indication that by using the word ''afraid'' that appellant meant he was afraid that Moles would take the property. Two officers testified that appellant said that he was afraid that Moles would assault him, so he fired the gun. It does not appear that appellant stated to the trial court, expressly or impliedly, that he was presenting an issue that he acted in defense of property. It seems to be his position that defense of property was an issue because the trial was ''punctuated by references'' to unpaid rent and to the removal and holding of Moles' property. The fact that such references were made would not present an issue that appellant, at the time he grabbed the gun from the shelf, was trying to protect a lien for rent upon a baby's cot, some bed covers, and other undesignated personal belongings of Moles. Even in this instruction No. 8 prepared by appellant, he did not imply that defense of property was an issue. As above shown, he merely quoted section 50 which pertains to defense of person and property, and then he applied the section to the present case by stating

"In this regard" he had a right *"to protect himself."* It is clear that appellant was not requesting the giving of that instruction on the basis that defense of property was an issue. That instruction placed emphasis on the right of a person to defend himself—as to which right several other instructions were given.[1] Any theory that appellant was defending his purported lien-interest in Moles' property would be speculative, and a finding that he was so defending would not be supported by the evidence. The court did not err in refusing to give appellant's requested instruction No. 8.

The court also refused to give appellant's requested instruction No. 11, which was as follows: "The jury is in-

[1] "The kind and degree of force which a person may lawfully use in self-defense are limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that he is acting, and may act, in self-defense, he is not justified in using a greater degree of force than that permitted by the rule just stated to you."

"You will note that actual danger is not necessary to justify self-defense. If one is confronted by the appearance of peril which arouses in his mind, as a reasonable person, an honest conviction and fear that he is about to suffer death or great bodily harm, and if a reasonable man in a like situation, seeing and knowing the same facts, would be justified in believing himself in like danger, and if the person so confronted acts in self-defense upon such appearances and from such fear and honest convictions, his right of self-defense is the same whether such danger is real or merely apparent. Even if in the light of after-acquired information or from the distance and perspective of the jury box it should appear that there was no actual or only slight danger, that fact would not affect the right of self-defense if the appearances establishing that right, as I have stated them, existed."

"Thus, although one has been unlawfully attacked, he may not in the name of self-defense inflict further or any injury upon an erstwhile assailant after danger from the assailant no longer exists, as the situation would appear to a reasonable man in the same position.

"The rule of self-defense does not authorize one to seek revenge or to take into his own hands the punishment of an offender."

"It is lawful for a person who is being assaulted, and who has reasonable ground for believing that bodily injury is about to be inflicted upon him, to stand his ground and defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

"A person who has been attacked and who is exercising his right of lawful self-defense is not required to retreat, and he not only may stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger if that course appears to him, and would appear to a reasonable person in the same situation, to be reasonably and apparently necessary; and this is his right even though he might more easily have gained safety by withdrawing from the scene."

structed that the defendant Monte Haag was within his legal rights to enter the motel housing unit in question, remove the personal property of James A. Moles and family, and to re-rent the motel unit to a new guest.'' Even if it be assumed that defense of property was an issue, this instruction was properly refused because it would advise the jury that as a matter of fact Moles was delinquent in making the payments of $10 a day. As stated with reference to instruction No. 8 any theory, under the evidence here, that appellant was defending his purported interest in the property would be speculative. The court did not err in refusing to give instruction No. 11.

■ The court also refused to give instruction No. 12, which was as follows: ''The jury is instructed that the California law permits the owner of a furnished motel housing unit, in cases where the occupant is delinquent in the payment of rent and service charges, to enter the motel housing unit, remove and hold the personal property of the occupant as security for the payment of rent and service charges, and to re-rent the motel housing unit to other occupants. The foregoing is predicated upon the proposition that the occupant is delinquent in the payment of rent or other charges for the motel housing unit. The jury is further instructed that in the instant case, Mr. Haag had the full legal right to enter the Moles motel housing unit, and to remove and hold the personal property of Mr. Moles and family, in the event that Mr. Moles was delinquent in the payment of the rent and services charges for the motel housing unit.'' Appellant asserts that he had a lien upon the property of Moles under the provisions of sections 1861 and 1861a of the Civil Code. Section 1861, in effect at the time of the eviction, provided that hotel, inn, boardinghouse and lodginghouse keepers shall have a lien upon baggage and other property of their guests for rent. Section 1861a, in effect at the time of the eviction, provided that keepers of furnished apartment houses, furnished apartments, furnished cottages, or furnished bungalow courts shall have a lien upon baggage and other property of their guests for rent. Appellant states, in effect, in his opening brief that section 1861 was amended on September 9, 1952 (before the eviction) to include the word ''motel.'' The amendment became effective on September 9, 1953 (after the eviction on March 28, 1953). This instruction No. 12 would advise the jury that, at the time of the eviction, a motel owner had such a lien if the occupant of

the motel was delinquent in the payment of rent; and in the instant case the appellant had the right to evict Moles in the event Moles was delinquent in payment of rent. It is not necessary to decide herein whether appellant, as the operator of a motel, had such a lien under said sections. Even if it be assumed that a motel owner had a lien for rent, and if it be assumed that defense of property was an issue, the instruction was properly refused because it was ambiguous, and would tend to confuse the jury, as to whether the right to evict, under the evidence here, depended upon a delinquency of $60 or a delinquency in paying the $60 at the rate of $10 a day. It was conceded that Moles had not paid $60 for rent that had accrued. There was evidence, however, to the effect that appellant said that he would not evict Moles if the unpaid rent was paid at the rate of $10 a day; and that Moles had made payments under that arrangement. Under the evidence herein, such general reference in the instruction to delinquency in payment of rent was not adequate to properly instruct the jury, even if it be assumed that an instruction on the subject of right to evict should have been given. As stated with referenec to instructions Nos. 8 and 11, a theory that defense of property was involved would be speculative. The court did not err in refusing to give instruction No. 12.

Appellant also contends that the court erred in giving the following instruction known as No. 624: ''The right of self-defense exists only as against an unlawful attack. The right does not exist, even though bodily injury appears probable, as against a person who, in threatening or appearing to threaten injury is acting lawfully.'' He asserts that said instruction qualified the other instructions on self-defense which were given, in that, it left a question as to whether Moles was acting lawfully; that the jury could have concluded that appellant exercised reasonable force in self-defense and in defense of property, but the defenses were unavailing because Moles was acting lawfully in pursuing his property. Since there was no evidence that Moles was trying to take the property, a question as to whether he was acting lawfully in trying to take it did not arise. The instruction, however, should not have been given. It did not define ''unlawful attack,'' and it was not adequate to advise the jury as to circumstances which, under the evidence, would or would not constitute ''acting lawfully.'' In view of the instructions which were given relating to self-defense (particularly in-

structions to the effect that actual danger was not necessary in order to justify self-defense; and that a person who is being assaulted may stand his ground and use reasonable force to defend himself), it does not appear that the giving of said instruction No. 624 was prejudicially erroneous.

Appellant also contends that the court erred in sustaining an objection to certain testimony, and in sustaining an objection to an offer of proof. As above stated, after the altercation in the office the appellant ran across the street to a gas station. The station operator, called as a witness by appellant, testified that on March 28, 1953, between 7 p. m. and 8 p. m., he saw appellant dash across the street and run into the gas station, and heard him shout, "Call the police and call an ambulance. I have just shot a man." He (station operator) called the police. Then appellant's counsel asked: "After you called the police, what did you do, yourself?" The witness answered: "I asked him what happened, and he told me he had evicted this——." Thereupon, the deputy district attorney said: "Just a moment; I object to any conversation between this witness and Mr. Haag upon the ground that it is hearsay and self-serving." The objection was sustained. Appellant then offered to prove by said witness that he (station operator) had a conversation with appellant "at the time just stated, being immediately following the shooting, within a matter of one minute following the firing of the last shot," wherein appellant said: that he was in mortal fear of Moles; Moles charged in on him and he was in fear of physical violence from Moles; Moles grabbed appellant's gun from him; appellant ran to call the police and as he was running he saw Moles fire at him. An objection to the offer of proof was sustained. Appellant argues that the conversation was admissible as part of the res gestae, and to prove the state of mind of appellant at the time of the shooting, "in addition to that of rehabilitating his testimony." ■ As to the ruling sustaining the objection to the conversation, it appears that, after the altercation and before the conversation, appellant ran "down" the motel property, around the corner of the building, across the street and into the station, and that after he had arrived in the station the operator called the police. There was no testimony as to how much time elapsed while appellant was running and the telephone call was being made. In *Showalter* v. *Western Pac. R. R. Co.*, 16 Cal.2d 460, it was said at page 468 [106 P.2d 895]: "The practice in this state heretofore has been to allow the trial

court no discretion in determining the admissibility of alleged *res gestae* statements; however, under the view taken herein there is necessarily some element of discretion in the trial court." It cannot be said that the trial court abused its discretion in concluding that the conversation, which was had after such acts of running and telephoning, would not be a part of the res gestae. ▆ As to the offer of proof, it appears that appellant offered to prove that the time which elapsed, after the last shot and before the conversation, was one minute. In view of the testimony as to the running and telephoning that preceded the conversation, the court, in the exercise of its discretion, could have concluded reasonably that the conversation was not a part of the res gestae, even though the station operator should testify that the conversation occurred within one minute after the last shot. As to the matter of "rehabilitating" the "testimony" of appellant, it is clear that appellant had not testified at the time said offer of proof was made. The station operator was the first witness called by appellant. There is no merit to the alleged point regarding rehabilitation.

▆ Appellant also contends that the court erred in sustaining an objection to a certain question, and in sustaining an objection to an offer of proof regarding the subject matter of that question. Appellant asked witness Graham, called as a witness by appellant, if he recalled "about a week before this shooting incident when Mr. Haag [appellant] had an altercation with a man who chased him with a shovel?" An objection to the question, on the ground that it was irrelevant and immaterial, was sustained. Then appellant offered to prove by said witness that, about one week previous to the shooting, a third party, a tenant (not Moles), became irate and chased appellant with a shovel. He also offered to prove by said witness that, about two weeks before Moles came to the motel, another irate tenant attacked, struck, and beat appellant. An objection to those offers of proof was sustained. Conduct of the third persons referred to in the offer of proof was unrelated to and had no connection with the conduct of Moles in the present case. The objection to the question and the objections to the offers of proof were properly sustained.

▆ Appellant's father, called as a witness by appellant, testified that he had operated motels about 20 years. Appellant asked said witness to describe the nature of the motel business and the type of people who are encountered in oper-

ating a motel. An objection to the question, on the ground that it was irrelevant and immaterial, was sustained. Then appellant offered to prove by said witness that the motel business is a rough business and that it is not uncommon for the motel operator to be assaulted by patrons; that he had advised his son to be careful of tenants who would assault and injure him; he was with appellant when the gun was purchased; he advised appellant to use the gun only to defend himself and to frighten any attackers. An objection to that offer was sustained. Such evidence was immaterial to the issues herein. The objections were properly sustained.

It is to be noted that appellant testified, in relating a conversation with the police officers, that he told the officers that about three months before (the present incident) he had been beaten up by a man who was about 6 feet tall and weighed 200 pounds; that he also told the officers that, about a week before, someone chased him out of the motel with a shovel. It thus appears that, irrespective of the rulings on the offers of proof, some of the evidence referred to in the offers came before the jury through the testimony of appellant.

The judgment and the order denying motion for a new trial are affirmed. The appeal from the sentence is dismissed.

Shinn, P. J., and Vallée, J., concurred.