[Crim No. 1426.   Fourth Dist.   Oct. 29, 1959.]

THE PEOPLE, Respondent, v. GERALD MARVIN FAIN, Appellant.

858

Thomas Whelan for Appellant.

Thomas Whelan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David B. Allen, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged with, tried and convicted of, manslaughter (violation Pen. Code, § 192, subd. 3(a)). Defendant's motion for new trial was denied, and he was granted probation for a period of five years with the first six months in custody. He has appealed from the judgment and from the order denying his motion for a new trial. The facts shown by the record before us are as follows:

Immediately after midnight on December 20, 1958, the deceased, Donald Bruce Michie, was at a Drive-In café called Lawton's Drive-In on Morningside Way near El Cajon Boulevard in the city of San Diego in company of three of his friends. He was seen by one of them to enter a 1956 white convertible Chevrolet on the passenger's side, with an unidentified person driving. At about this same time three other young men named Sweetland, Tenent and Phillips, all of whom were acquainted with this defendant, also departed from the same Drive-In by the same route, going toward El Cajon Boulevard on Morningside Way, thence west on El Cajon Boulevard. They were in a red Austin Healy sports car going about 35 miles per hour when the defendant overtook them on El Cajon Boulevard. He raced his engine, pulling forward and then dropping back even with them, repeating this procedure several times. The person in the passenger seat put his head out the window and is identified by the three persons in the Austin Healy as the deceased. The defendant during this time was clearly seen by the same

persons and identified as the driver. About this time police officer Isbell of the city of La Mesa observed both vehicles, noted the actions of the Chevrolet and pursued the Chevrolet, turning on his red light and siren. The Chevrolet increased its speed making several turns on different streets in a residential area, a posted 25 miles per hour speed limit zone. Officer Isbell by radio then called for help. At about 71st and Stanford Streets Isbell lost sight of the Chevrolet. Police Officer Garvin heard Isbell's radio call and picked up sight of the Chevrolet at about 70th Street and Alamo Way. The Chevrolet skidded at the turn at Alamo Drive and Alamo Way. Officer Garvin had his red lights and siren on. Both cars were now traveling at about 60 to 70 miles per hour but the Chevrolet was pulling away. They went through a stop sign at Rolando Boulevard at about 70 miles an hour, with the police car about 150 feet behind. Defendant's car then went out of control, skidded 196 feet, struck the curb, then a parked car, and finally a tree, coming to rest on a front lawn facing the opposite direction. The police officer stopped at the scene of the accident, called in for an ambulance and to the San Diego Police Department (the cars had now entered the city of San Diego). Deceased was bleeding profusely and was lying across the sidewalk wearing a torn blue jacket. Defendant was lying toward the rear of the car on the lawn and appeared to be unconscious. Officer Isbell arrived in less than thirty seconds. The glass of the door on the passenger side of the Chevrolet was broken out and pieces of blue cloth, which matched those from the tear on the windbreaker jacket, with pieces of flesh were found on the jagged portions of the window remaining in the car. There were no tears or gashes noticed in the clothing or person of the defendant but in addition to the tears in the sleeve of deceased's jacket the autopsy on deceased revealed, among other things, a large gash ten inches long on the back of his right arm. The cause of death was identified as being from this particular accident and is not the subject of dispute on this appeal.

The defendant testified that he remembered nothing of what happened from the time he was at Lawton's Drive-In until he woke up in the hospital sometime the next day.

Defendant's first complaint is that the court erred in refusing to admit in evidence the testimony of the witness Buss to the effect that within five minutes after the accident occurred, while defendant was lying on the lawn in an appar-

ently unconscious or semiconscious condition, Officer Isbell questioned defendant as to who was driving and defendant said "My buddy" or some words to that effect. It is contended that such statement falls within the classification of res gestae even though it be a self-serving declaration. As this matter came before the trial court for decision, it had several matters to consider. The defendant had apparently been cited four times in the preceding year for speeding, had lost his driver's license, and had recovered the driver's license only the day before this accident occurred. While the lay witnesses testified to an appearance of unconsciousness or semiconsciousness it is also apparent that no marked change occurred in his appearance to show whether or not defendant clearly knew to what question he was responding, or whether he was or was not conscious or unconscious. It is certainly probable that he had strongly on his subconscious mind the danger to his driver's license.  ▇  The rule with respect to res gestae declarations is substantially clarified by the discussion in *Showalter* v. *Western Pacific R.R. Co.*, 16 Cal.2d 460 [106 P.2d 895], in which there is adopted for California the view of Professor Wigmore, where the court says at page 468:

"The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief'. To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence, [2d ed.] § 1750.)"

▇  The court quotes with approval from *Roach* v. *Great Northern Ry. Co.*, 133 Minn. 257 [158 N.W. 232], as follows: " 'In passing upon the admissibility of testimony claimed to constitute a part of the *res gestae*, the trial court determines whether unsworn statements are so accredited that they may go to the jury and be weighed and valued by it, and in determining this it considers whether the statements are spontaneous, whether there was an opportunity of fabrication or

a likelihood of it; the lapse of time between the act and the declaration relating to it; the attendant excitement; the mental and physical condition of the declarant, and other circumstances important in determining whether the trustworthiness of the statements is such that they may safely go to the jury.' ''

■ The court likewise quotes with approval from *Coryell* v. *Clifford F. Reid, Inc.*, 117 Cal.App. 534 [4 P.2d 295], as follows: '' 'Again we hold that the trial court before whom the witness appeared is better prepared to pass upon the evidence upon which the admissibility of such statements depends than is an appellate court, and his ruling should not be disturbed unless he has abused his discretion.' ''

The general rule adopted for California by the Showalter case regarding declarations as a part of the res gestae has been followed in numerous supreme and appellate court decisions since that time. (*People* v. *Costa*, 40 Cal.2d 160, 168 [252 P.2d 1]; *Dillon* v. *Wallace*, 148 Cal.App.2d 447, 451 [5] [306 P.2d 1044]; *People* v. *Haag*, 127 Cal.App.2d 93, 101 [5] [273 P.2d 328].) In *Lane* v. *Pacific Greyhound Lines*, 26 Cal.2d 575, 581 [160 P.2d 21], the trial court's ruling, which was corrected by the Supreme Court, was not based on its own discretionary judgment as to whether or not the facts before it warranted the application of the res gestae principle to the statement, but was based on an entirely different ground, to wit, that a statement of an employee about the cause of an accident could not bind a principal. Thus the Supreme Court found that the statement involved was permissible as a part of the res gestate, which the trial court overlooked entirely. The necessity so clearly explained in the Showalter case of placing discretion in the trial judge, in admitting or refusing to admit declarations claimed to be a part of the res gestae, has been recognized and applied in later cases. (*Dolberg* v. *Pacific Electric Ry. Co.*, 126 Cal.App.2d 487, 489 [3] [272 P.2d 527].) ■ Considering the lapse of time here involved, the doubt as to whether 'the defendant was conscious or unconscious, or even understood the officer's question, the prior convictions for speeding, the loss of license and the recovery thereof the day before, all of which were likely to weigh heavily on the conscious or subconscious mind of the defendant, thus producing strong motives for fabrication and all the other attendant circumstances, we are unable to affirmatively say that the trial court's discretion was abused or that prejudicial error resulted.

■ The defendant next contends that the trial court erred in refusing to submit to the jury the question as to whether or not the res gestae statement of the defendant was spontaneous, and cites in support thereof the case of *People* v. *Keelin,* 136 Cal.App.2d 860 [289 P.2d 520, 56 A.L.R.2d 355]. While the court might appropriately submit the question to the jury if it was in doubt, we think the Showalter case clearly shows that the discretion in the first instance lies with the trial court and that except in a clear case of abuse of discretion the ruling of the trial court will not be disturbed.

■ Next the defendant contends the court erred in denying the application of the appellant for a three-day adjournment to obtain the testimony of a witness. It must be remembered that this application for a continuance was not made until after the prosecution case was all in, in spite of the fact that defense counsel by his own admission had known about this witness for a long time prior to the trial. Defense counsel orally represented to the trial court that he had attempted two days prior to the trial to have the witness subpoenaed and had been unable to do so. No affidavits were presented, a detailed statement of exactly what the witness would testify to was not presented, and even the statements of counsel were third-hand and somewhat nebulous. Defendant's application for a continuance could easily have been presented to the court prior to the commencement of the trial. It was not a case of emergency so that it was perfectly feasible to present affidavits. Had the application been made prior to the commencement of the trial on adequate affidavits no doubt the trial court would have granted the continuance, but since the application was presented at a time when the trial was nearly over and without exact statements of what the witness would testify to and without appropriate affidavits, we cannot say that the court in any way abused its discretion. (*People* v. *Rokes,* 18 Cal.App.2d 689, 694 [8] [64 P.2d 746]; *People* v. *Beal,* 108 Cal.App.2d 200, 205 [11] [239 P.2d 84].)

■ Next the defendant contends that the court erred in its discussion with the jury after they retired for deliberation and before returning a verdict. The jury retired at 10:44 a. m. At 4:40 p. m. they were brought into court and they were asked if there was any possibility of their reaching a verdict. They were also asked how they stood numerically, without respect to whether they were for conviction or acquittal. The foreman stated he believed they were hopelessly deadlocked and that "One of the jurors has admittedly had

an unpleasant experience with one of the testifying officers.'' The court then instructed the jurors that it was their duty to consider the testimony from the witness stand and not any prejudice they might have, and directed them to deliberate further. The court fairly summarized its views on the matter by the following statement:

"THE COURT: I will again tell you, you are supposed to consider the evidence in the case that was elicited from the witnesses on the stand and not any prejudices you may have. We are not here to try prejudices. I have instructed you that you are not to try prejudices you may have against any of the witnesses or the defendant or anyone else. You are supposed to consider the evidence and weigh it in accordance with the rules I gave you. That is all I am asking you to do and I think any reasonable person can go out and lay aside their prejudice and consider this evidence as to the manner in which I told you to consider it. If you have any objection to the evidence, if you think the evidence is insufficient, that is up to you, but consider the evidence in the light that I instructed you previously. Go out and deliberate.''

The defendant does not contend that the above-quoted statement is erroneous as a proposition of law. What he does contend is that at the particular time the question was asked and answered and under the particular circumstances that the direction was given by the court it amounted to an instruction of one juror to change her vote. With this we cannot agree. The court did not direct the jury to bring in any particular verdict, it did not direct them to agree at all, and it did not threaten to keep them out for any unreasonable length of time nor even suggest that they would be kept out for any considerable further time. The court did not indicate what it thought of the evidence nor did it add any argumentative voice or suggestion that they ought to agree. It may be that the judge could have guessed as to how the jury stood, but the judge did not suggest that the evidence pointed in any particular direction or that he had any views on it being all one way. Nor did he suggest that the jury reach a verdict promptly nor that the jury ought to agree. The cases cited by defendant are all distinguishable from the case at bar. *People* v. *Crowley*, 101 Cal.App.2d 71 [224 P.2d 748] contains severely argumentative material from the judge to the jury as to why they ought to agree, coupled with a specific limitation of time. In *People* v. *Walker*, 93 Cal.App.2d 818 [209 P.2d 834], the court again indulged in strong argument

to the jury as to why they should reach a verdict, and in effect demanded that they do so after having been directly informed by the foreman that they stood 10 to 2 for conviction. In *People* v. *Baumgartner,* 166 Cal.App.2d 103 [332 P.2d 366], the foreman directly stated that the jury stood eleven for conviction. The court immediately gave a long dissertation on the fact that absolute certainty could not be expected with clear evidence on one side or the other, with the duty of the jury to decide the case if it could conscientiously do so; that the jurors should pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's arguments, etc. In other words, in the Baumgartner case the court's dissertation to the jurors was a direct suggestion to the minority juror to give way to the opinion of the majority. This the trial court in the case at bar did not do. It is true that a trial judge is treading on very dangerous ground and should be extraordinarily cautious under the circumstances here presented. However, while it might have been better for the trial judge to have abstained from this kind of discussion under the circumstances here presented, there was nothing in his words that was not a fair and reasonable statement of the law; there was no indication that he believed the evidence pointed in any particular direction; there was no direction or suggestion that the jury should agree immediately or at all; and it does not seem probable that the jury took a wrong inference from what he said.

Defendant next contends that the court erred in not granting a new trial on the ground of newly discovered evidence.

"To entitle a party to a new trial on the ground of newly discovered evidence it must appear that the evidence is not merely cumulative, but is material, and that it is such as to render a different result probable on retrial; and that the party could not with reasonable diligence have discovered and produced it at the trial." (*People* v. *Sheran,* 49 Cal.2d 101, 111 [10] [315 P.2d 5].)

"It has been repeatedly held that a motion for a new trial is addressed to the sound discretion of the trial court, and its action will not be disturbed except for a clear abuse of discretion." (*People* v. *McGarry,* 42 Cal.2d 429 [267 P.2d 254].)

The affidavits presented by defendant in support of his motion are merely an elucidation of the basic material upon which he had defectively asked for a continuance. His

counsel had admittedly known of this evidence a long time prior to trial. It was not newly discovered evidence. We can see no prejudicial error in this order. (*People* v. *Greenwood,* 47 Cal.2d 819, 821 [1] [306 P.2d 427].)

An examination of the entire evidence in this case shows that the evidence presented to the jury was overwhelmingly sufficient to support the verdict. While the rulings of the court respecting the alleged declaration of defendant immediately after the accident and respecting the discussion of the court with the jury after the jury had retired and before the verdict was rendered were very close questions indeed, nevertheless when we view the case as a whole we think a different verdict would have been improbable had the rulings complained of not been made. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [12] [255 P.2d 785].)

The judgment and order appealed from are affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

A petition for a rehearing was denied November 23, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 23, 1959. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.