CARLOS LUGO FIGUEROA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, HUMACAO PART, LUIS PEREYÓ, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. O-69-207.      Decided June 25, 1970.

240

*Julio C. Rivera* for petitioner. *Gilberto Gierbolini, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for intervener.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The jury returned to the courtroom, after having been seventeen minutes in the deliberating room, and told the judge who presided the hearing that it could not reach an agreement to return a verdict. Without the judge having inquired about it, one of the jurors told him that they were divided, seven to acquit and five to convict. The judge commented that it was not proper to reveal that information and that he would proceed to discharge the jury. The defense objected. It insisted that the jury should continue deliberating. But that, notwithstanding, the judge discharged it.[1] Defendant appealed to this Court to review said act. We refused to do so through an order copied at the foot.[2]

---

[1] The incident occurred as follows:

"THE COURT:—

Let the jury come in.

Do you accept that the jury is the same and that it is complete?

ATTORNEY RIVERA:—

Yes, we accept, Your Honor.

The case having been set anew, the defense of former jeopardy was raised. The same judge who presided the previous hearing took cognizance of this contention. He refused it. We decided to review the order.

■ The guarantee which establishes that no person shall be put in double jeopardy for the same offense has a deep root

---

THE COURT:—

Have the ladies and gentlemen of the jury reached a verdict?

RAMÓN ROURE (Jury Foreman)

A.—No, Your Honor, we could not reach an agreement.

THE COURT:—

That you could not reach an agreement?

ROURE:—

No, sir.

THE COURT:—

It is still early.

ROURE:—

Well, we reached an agreement of seven to five, seven guilty and five.

MARÍA DELGADO HERNÁNDEZ (Juror)

Seven not guilty and five guilty.

OTHER JURORS:—

Seven not guilty and five guilty.

THE COURT:—

Then, we must postpone the hearing of the case until a new setting.

ATTORNEY RIVERA:—

Then, the Court is considering at this moment the discharge of the jury?

THE COURT:—

I am saying more, since they are new, but they should never say their standing, nor eight to seven, nor five to two.

PROSECUTING ATTORNEY:—

Your Honor, we were going to request at this moment the discharge of the jury.

ATTORNEY RIVERA:—

We are going to object, the Court has discretion, it should decide, it may charge the jury, you may go and stay away for another hour, you may return tomorrow and continue deliberating, but the jury should not be discharged on account of that.

THE COURT:—

I have not considered anything, but the jury cannot say we are so much to so much. The Court discharges the jury.

ATTORNEY RIVERA:—

This jury left the courtroom at 4:48 and returned to the courtroom

in the Western criminal procedure. Friedland, Double Jeopardy (Oxford Press 1969). Its origin is traced to Greek and Roman times and to Great Britain's common law, *Benton v. Maryland*, 395 U.S. 784 (1969), where the Federal Supreme Court considering the fundamental nature of said guarantee, applied it to the States through the Fourteenth Amendment. See also, *Price* v. *Georgia*, 398 U.S. 323, decided on June 15, 1970. The People of Puerto Rico has also considered it to be fundamental by making it a part of our Bill of Rights. Section 11 of Art. II provides that "No person shall be twice put in jeopardy of punishment for the same offense."

In *People* v. *Arteaga Torres*, 93 P.R.R. 146 (1966) and in *Piñero Agosto* v. *Superior Court*, 94 P.R.R. 193 (1967), we set forth the fundamental concepts of the defense of double jeopardy citing the latest case law of the Supreme Court of the United States.

---

at 5:05, we understand that what the jury needs now is, whether it needs additional instructions, or additional time, additional time would be the proper thing.

THE COURT:—

But the jury shall never say their standing, five to so much, that should not have been said.

The Court understands that the jury should be discharged, and it is discharged.

ATTORNEY RIVERA:—

With our objection. We understand that the jury is duly constituted, and that said statement is not a just cause for its discharge."

2 It provides thus:

"The foregoing petition for a writ of certiorari having been carefully considered, and the documents attached thereto having been examined and taking into consideration that defendant Carlos Lugo Figueroa has not as yet formally requested before the respondent Court the dismissal of the complaint for having been placed in jeopardy of conviction of the offense charged against him under Rule 64(e) of the Rules of Criminal Procedure, 1963, as a result of the incident which took place during the trial held on September 10, 1969, in the criminal cause No. M-69-58, for involuntary manslaughter, which is being prosecuted against him, the issuance of the writ, for the time being, is hereby denied."

■■ It is evident that when the jury is discharged before returning a verdict, the defendant cannot be prosecuted again unless he had consented to the discharge, or when the same is proper because the circumstances enumerated in Rule 144 of the Rules of Criminal Procedure of 1963 are present. The discharge of the jury contrary to law is equivalent to a verdict of acquittal. See *Paulson* v. *Superior Court of El Dorado County*, 372 P.2d 641 (Cal. 1962).

Rule 144 provides:

"The court may order the jury to be discharged before verdict in the following cases:

"a) If before the jury retires to deliberate, progress of the trial is prevented by reason of sickness or death of one of the members of the jury, unless the court decides to administer oath to another juror in substitution of the former and commence a new trial.

"b) If after the jury retires to deliberate, the progress of the trial should be prevented by reason of sickness or death of a member of the jury, an accident or any other cause to prevent their being kept together.

"c) If deliberation extends for a length of time that the court may deem sufficient to conclude clearly and manifestly that there is no possibility that the jury can agree.

"d) If any error or irregularity should have been committed during the trial which in the opinion of the court precludes the jury from returning a fair and impartial verdict.

"e) For any other cause by consent of the parties.

"In all cases where a jury is discharged under the provisions of these Rules, the cause may be tried again."

We see that subdivision (d) of Rule 144 provides that if in the opinion of the court "any error or irregularity should have been committed during the trial which . . . precludes the jury from returning a fair and impartial verdict" the court may order the jury to be discharged before verdict.

In *People* v. *Rivera*, 77 P.R.R. 628 (1954), we stated that the fact that the jury stated how they stood numerically without indicating on which side the majority voted did not

constitute error. In footnote 4 of that opinion, at page 634, we expressly avoided the question of whether the fact that the jury spontaneously informed how many were to convict and how many to acquit constituted error.

In state and federal jurisdictions there are a series of authorities which maintain that it is a fatal error for the judge who presides the hearing to request information as to how the jury is divided specifying how many are to convict and how many to acquit.[3] The principal case which sustains this is that of *Brasfield* v. *United States*, 272 U.S. 448 (1926). This doctrine has been greatly criticized. Wigmore, in his well-known treatise condemns it. VIII Wigmore, On Evidence 680, footnote 3 (1940 ed.). And in a recent article reference is made to the fact that the majority of the commentators and judges consider the same to be without any legal basis. *On Instructing Deadlocked Juries*, 78 Yale L.J. 100, 132 (1968). In *Beale* v. *United States*, 263 F.2d 215 (5th Cir. 1959), the court stated that the rule in *Brasfield* was not inflexible and that they had to consider whether the defendant is prejudiced. See also *Butler* v. *United States*, 254 F.2d 875 (5th Cir. 1958). See *United States* v. *Rogers*, 289 F.2d 433 (4th Cir. 1961), where it is set forth how convenient it is for the judge to know in what stage are the deliberations, for the purpose of properly charging the jury so that the latter may return a verdict. See also *United States* v. *Rao*, 394 F.2d 354 (2d Cir. 1968) and *United States* v. *Samuel Dunkel & Co.*, 173 F.2d 506 (2d Cir. 1949).

---

[3] As a general rule this question has been raised on appeal as an error to reverse. Few are the cases where the judge who presides the trial discharges the jury after having knowledge of the information. As a matter of fact, in our study and consideration of this case we have only found two cases where the judge discharged the jury: the case of *Paulson* v. *Superior Court of El Dorado County*, 372 P.2d 641 (Cal. 1962); and that of *Mullin* v. *United States*, 356 F.2d 368 (D.C. Cir. 1966), which are mentioned in the opinion.

Other authorities maintain that the fact that the jurors voluntarily disclosed, without the judge's inquiry, the division of their vote does not constitute an error or irregularity which justifies the discharge of the jury. The fact that the information is known does not have the effect of precluding the jury from returning a fair and impartial verdict. *United States* v. *Meyers,* 410 F.2d 693, 697 (2d Cir. 1969) ; *Huffaker* v. *State,* 168 S.E.2d 895 (Ga. 1969) ; *State* v. *Smith,* 431 S.W.2d 74, 86 (Mo. 1968) ; *People* v. *Wooley,* 15 Cal. App.2d 669 (1936) ; *People* v. *Piscitella,* 266 P. 349 (Cal. 1928) ; *People* v. *Hall,* 25 Cal. App.2d 336 (1938) ; *Bowen* v. *United States,* 153 F.2d 747 (8th Cir. 1946), *cert. den.,* 328 U.S. 835 (1946).

The reason set forth to sustain that the judge's request for the information is an error, is that in charging the jury to continue deliberating the minority of the jurors, as a matter of fact, are being coerced to join and concur with the majority. If the ground is valid when the judge requests the information it is also valid in the case where the jurors give it spontaneously. There is no reason for the minority to feel that they are coerced in the first case and not in the second. There is no basis whatsoever for the distinction. It is the same whether the judge knows how the division is because he requested that information or whether he obtained it because the jury offered it spontaneously. Note, *The Allen Charge,* 53 Va. L. Rev. 123, 132 (1967). Actually there is no reasonable basis to maintain that because the judge knows of the division of the jury, the minority feels that it is coerced if the judge urges them to continue deliberating to see whether they can reach an agreement and return a verdict. On the other hand, it is held that it is convenient for the judge to know of the stage of the deliberations so that he may charge the jury to return a verdict.

The return of a verdict benefits the state as well as the defendant. The state benefits because it does not have to incur the effort and expenses which a new trial entails, besides

the fact that the congestion of the calendar is not increased. The defendant spares the burden of a pending accusation and the expenses and annoyance involved in entering trial again. *United States* v. *Rogers, supra; State* v. *Doan*, 30 N.W.2d 539 (Minn. 1947).

Every case should be considered on its particular merits. The time the jury has been deliberating, and the character of the instructions delivered by the judge after knowing of the division of the jury must be considered. If a jury has been deliberating for a considerable period of time, and after the judge knows how they are divided, he insists that they must reach a verdict, that sole fact in that specific case may constitute a coercion which invalidates the verdict. But certainly, in a case like the one under our consideration, a jury cannot be considered as having been coerced, when after having just started their deliberations (only 17 minutes had elapsed since they left the courtroom), the judge, after knowing of their division, urges them to continue deliberating. In *Beale* v. *United States, supra,* the Court distinguished the *Brasfield* case because of the fact that upon having knowledge of the information the jury had only been deliberating for fifteen minutes.

Mr. Chief Justice Traynor, of the Supreme Court of California, in the *Paulson* case, *supra,* considers a situation similar to that of the case at bar where the jury voluntarily informed that they were seven to acquit and five to convict (with the difference that the jury in that case had been deliberating for five hours, and in the case at bar they had just started deliberating), and he holds that to discharge the jury under those circumstances is equivalent to a verdict of acquittal and it is proper to sustain the defense of former jeopardy when the defendant is prosecuted again.

In the case of *Mullin* v. *United States*, 356 F.2d 368 (D.C. Cir. 1966), opinion of the Chief Justice of the United States while he served in the Court of Appeals, upon which the

Solicitor General relies, is easily distinguishable from the case at bar. In the first trial held for Mullin, the foreman of the jury, voluntarily reported to the judge how they were divided and the judge immediately discharged the jury. Counsel for the defense did not object, and when the second trial was held, the defendant being represented by the same counsel he did not raise the defense of former jeopardy. Upon being convicted in the second trial he appealed and assigned as error that the provision of the Fifth Amendment which prohibits that any person be placed in jeopardy for the same offense had been violated. In deciding that the error was not committed and that it was proper to affirm the judgment, Judge Burger carefully clarifies that counsel for defendant did not object to the discharge of the jury, that the same counsel represented defendant in both cases and that in the second trial the defense of double jeopardy was not raised. See also *United States* v. *Chase*, 372 F.2d 453, 466 (4th Cir. 1967).

■■ So the only question which we must keep in mind is that the instructions follow the standard we established in *People* v. *Rivera, supra*, to the effect that the jury should not be coerced in order to return a verdict. See also *People* v. *Baumgartner*, 332 P.2d 366 (Cal. 1958); Annotation, *Dissenting Jurors, Instructions*, 100 A.L.R.2d 177 (1965). In *Wissel* v. *United States*, 22 F.2d 468 (2d Cir. 1927), the standards which the judges must follow in charging the jury, under these circumstances, are established. To discharge the jury under the circumstances in which it was discharged in the case at bar caused serious and fundamental prejudice to defendant. When his trial was held he was subject to be convicted and no sooner had the jury started its deliberations, because it voluntarily reported that seven were for acquittal, the judge discharges it. The judge under these circumstances did not act so as to guarantee the rights of the defendant. See *Paulson, supra*. Under the attendant circumstances, a simple

case of involuntary manslaughter, where the jury had hardly had any time to start its deliberations, it was proper for the judge to charge the jury to continue deliberating, just as defendant had requested. See *People* v. *Fain*, 345 P.2d 305 (Cal. 1959). The important thing was, as we stated before, not to coerce the jury to make them reach a verdict, while charging them. The discharge of the jury under the circumstances of the case at bar was not justified. The trial judge erred in denying the motion of former jeopardy.

Judgment shall be rendered accordingly.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra concurs in a separate vote.

—O—

MR. JUSTICE SANTANA BECERRA, concurring.

San Juan, Puerto Rico, June 25, 1970

I fully concur with the Court which today enforces the constitutional guarantee of a defendant to the effect that no person shall be twice put in jeopardy of punishment for the same offense. Constitution of the Commonwealth of Puerto Rico, Art. II, § 11.

On several occasions I have expressed myself against what I consider to be, in recent years a dangerous tendency of the Courts of First Instance to discharge the jurors in a proceeding before the verdict in order to start anew, said tendency product, in my opinion, of the failure to establish the proper balance between Rules 38 (d) and 144 (d) and (e) of the Rules of Criminal Procedure of 1963 on the one hand, and the previous constitutional guarantee on the other, without acknowledging to the latter its greater hierarchy, in the use of the power, which the aforementioned Rules allow the judges to exercise. See my statements in disagreement in *Ortiz Báez* v. *Superior Court*, 98 P.R.R. 254, 266 (1970); in

*Ríos Mora* v. *Superior Court*, 95 P.R.R. 115, 124 (1967), and my majority statements in *People* v. *Arteaga Torres*, 93 P.R.R. 146 (1966); *Piñero Agosto* v. *Superior Court*, 94 P.R.R. 193 (1967); *Soto* v. *Superior Court*, 90 P.R.R. 505 (1964).

I hope that with today's decision of the Court, that dangerous tendency in First Instance to discharge the jurors without taking properly into consideration the constitutional guarantee against jeopardy of punishment shall disappear. As we can see in the Opinion, this Court has duly established the standards to be followed to obtain the proper balance between what is permissible in Rules 38 and 144 and what is prohibited by the Constitution, without forgetting the idea that the former are subordinated to the latter.

Notwithstanding the foregoing, the granting of my vote in this case does not involve opinion on my part, which I reserve for the proper occasion, regarding whether or not it was a substantial error to disclose at the trial how the jurors were divided to convict and to acquit. I do not think it is necessary to decide and express myself on that point to decide what is pertinent as to the double jeopardy.

Petitioner's constitutional guarantee against double jeopardy was violated from the very moment when, without his consent—consent which, if existing, should be unequivocal, given in an intelligent manner, and without doubts as it happens everytime a constitutional guarantee is waived—or against his will, the jury was discharged in this case before the verdict, without this being one of those permissible constitutional situations. The fact that the disclosure constituted substantial error would not affect the constitutional question involved. The fact that it did not constitute substantial error, as decided in the opinion, would not affect the constitutional question either.

With the foregoing reservation of my opinion as to the aspect of whether or not the disclosure of the position of the

jurors as to petitioner's innocence or guilt constituted error, I adhere to the decision.